**CECILE INDUSTRIES, INC., Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

No. 277–84C.

United States Claims Court.

Nov. 22, 1989.

Marc Lamer, Philadelphia, Pa., for plaintiff.

Sheryl Floyd and Jane W. Vanneman, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., with whom were John R. Bolton, Asst. Atty. Gen. and David M. Cohen, Director, for defendant.

## OPINION

SMITH, Chief Judge.

This case is before the court on defendant's partial motion to dismiss the complaint, and defendant's motion to dismiss the remainder of the complaint. Plaintiff was terminated for default on a procurement contract with the Defense Personnel Support Center (DPSC). DPSC withheld money due plaintiff under that contract, as well as under two unrelated contracts, as an offset against liquidated damages it assessed against plaintiff under the default termination. Plaintiff contests the withholding as being (i) violative of the administrative offset provision of the Debt Collection Act, 31 U.S.C. § 3716 (1982), and (ii) a breach of contract. For the reasons set forth below, the complaint is dismissed in its entirety.

## FACTS [1]

On June 14, 1979, DPSC awarded contract no. DLA100-79-C-2851 (contract 2851) to plaintiff Cecile Industries, calling for the manufacture of 40,572 extreme cold weather sleeping bags. The contract contained a value-engineering clause, under which the contractor can share in savings resulting from its suggested design changes. Plaintiff earned $408,768.57 in royalties under contract 2851's value engineering clause.

Later, plaintiff was awarded two more contracts. On November 20, 1980, DPSC let contract no. DLA100-81-C-2414 (contract 2414) to plaintiff, calling for the manufacture of 22,000 extreme cold weather sleeping bags. On March 16, 1982, plaintiff was awarded contract no. DLA100-82-C-4247 (contract 4247), calling for the manufacture of 108,752 intermediate weather sleeping bags.

Contracts 2414 and 4247 both contained a government furnished material (GFM) clause. Under the GFM clause, DPSC supplied plaintiff with the materials necessary to manufacture the sleeping bags, and charged the value of the GFM against plaintiff's invoices for completed sleeping bags delivered. Plaintiff was able to use less material than projected, thereby entitling it to refunds for the difference between the value of GFM actually used and the amount withheld by DPSC.

After delivery of the sleeping bags under the first contract, no. 2851, DPSC complained to Cecile that the sleeping bags did not contain the proper quality of down filling. Sometime in 1983,[2] DPSC requested that Cecile take back the sleeping bags and replace the filling. On June 7, 1983, plaintiff invoiced DPSC for $408,768.57 in value engineering royalties due plaintiff under contract 2851. In November, 1983, plaintiff invoiced DPSC for $18,853.15 in GFM savings under contract 2414 and $65,261.73 under contract 4247. DPSC concedes that plaintiff earned GFM refunds in the amounts stated.

On April 23, 1984, DPSC terminated plaintiff for default on contract 2851, for plaintiff's alleged failure to cure the defective filling. Plaintiff initially appealed the termination to the Armed Services Board of Contract Appeals, but has since withdrawn the appeal. DPSC assessed approximately $1,700,000 in liquidated damages against Cecile for the costs of reprocurement of the sleeping bags under contract 2851, and informed plaintiff that it was withholding $492,883.45, representing the value engineering royalties under contract 2851 and the GFM savings under contracts 2414 and 4247, as an offset against the liquidated damages assessed under contract 2851.

---

1. Since the court is considering defendant's motion to dismiss, the court relies on the allegations in plaintiff's complaint.

2. The record is unclear as to the exact date.

## DISCUSSION

Count I of plaintiff's complaint alleges that the DPSC's withholding of money due Cecile under the three contracts is a violation of the Debt Collection Act (DCA), 31 U.S.C. §§ 3701–3719 (1982). Count II alleges that DPSC's withholding of money due Cecile under the three contracts, without complying with the DCA, represents a breach of those contracts. Earlier in the litigation, the parties filed cross-motions for summary judgment on the issue of whether the DCA applied to inter-contractual offset of contractor debts against money due that contractor.

The administrative offset provision of the DCA provides a debtor with certain pre-offset procedural protections. 31 U.S.C. § 3716. The issue of how, or whether, the DCA applies to debts arising from procurement contracts is a novel one. However, before the court ruled on the summary judgment motions,[3] defendant questioned whether the court had jurisdiction over plaintiff's claim[4] under the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–613 (1982).

Under the CDA, all claims by a contractor against the government relating to a contract "shall be in writing and shall be submitted to the contracting officer for a decision," 41 U.S.C. § 605(a); furthermore, claims exceeding $50,000 must be certified by a representative of the contractor, 41 U.S.C. § 605(c)(1). The contracting officer is required to issue a decision on claims of $50,000 or less within 60 days of the date of receipt of the claim. 41 U.S.C. § 605(c)(1). For claims exceeding $50,000, the contracting officer must, within 60 days of the date of receipt of the claim, either issue a decision or notify the contractor of the time within which a decision will be issued. 41 U.S.C. § 605(c)(2). In any event, the contracting officer's decision must be issued within a reasonable time. 41 U.S.C. § 605(c)(3). If the contracting officer fails to issue a decision within the time prescribed, the claim is deemed denied, 41 U.S.C. § 605(c)(5), and the contractor is free to file a direct access suit in the Claims Court, 41 U.S.C. § 609(a).

■ Cecile has not submitted written claims to the contracting officer (CO), nor has it received an final decision from the CO. The filing of such claims before the CO is a jurisdictional prerequisite to the filing of a complaint in this court. *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed. Cir.1985); *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338 (Fed.Cir.1983); *Christian Appalachian Project v. United States*, 10 Cl.Ct. 595 (1986). Hence, the court cannot hear plaintiff's complaint.

■ Plaintiff counters that DPSC's withholding payment under contract 2851, and offsetting payments under contracts 2414 and 4247, against liquidated damages assessed under contract 2851, amounts to a *government* claim. Under the CDA, a contractor may contest a government claim in the Claims Court without first filing a written claim with the CO. *Mega Construction Co. v. United States*, 14 Cl.Ct. 555 (1988); *Ralcon, Inc. v. United States*, 13 Cl.Ct. 294 (1987). The issue is thus squarely presented: does DPSC's withholding and offset amount to a "claim" under the CDA? If not, the complaint must be dismissed.

The Federal Acquisition Regulations (FAR) provide some guidance on the issue. 48 C.F.R., Part 33 prescribes procedures for resolving contract disputes. Subpart 33.2 "applies to all disputes with respect to contracting officer decisions on matters 'arising under' or 'relating to' a contract." 48 C.F.R. § 33.203 (1988). "Claim," as used in Subpart 33.2, means

**3.** This case was originally assigned to Judge Seto. On November 15, 1985, Judge Seto transferred the case to the Armed Services Board of Contract Appeals (ASBCA), so that it could be consolidated with a related appeal pending there. On December 22, 1987, Judge Seto granted the parties' motion for reconsideration and vacated his order transferring the case to the ASBCA. On February 16, 1988, the case was reassigned to Chief Judge Smith, following Judge Seto's resignation from the court.

**4.** Subject matter jurisdiction may be questioned at any time. RUSCC 12(h)(3); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986).

a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. A claim arising under a contract, unlike a claim relating to that contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant.... A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

48 C.F.R. § 33.201 (1988).[5] Nothing the DPSC has done with respect to contracts 2851, 2414, or 4247 is a claim under the CDA.

At this point it is worthwhile to recount just what DPSC did. As to contract 2851, DPSC (1) terminated plaintiff for default; (2) assessed approximately $1,700,000 in excess reprocurement costs; and (3) notified plaintiff that it was withholding $408,-768.57 in value engineering royalties. As to contracts 2414 and 4247, DPSC notified plaintiff that it was exercising its power of administrative offset, and withheld $84,-114.88 in GFM savings due plaintiff against the liquidated damages assessed under contract 2851.

DPSC made no demand of Cecile seeking the payment of money, rather, it merely advised Cecile that it was withholding payments on the invoices submitted for GFM savings under contracts 2414 and 4247. Plaintiff argues that the happenstance of who has the money cannot determine whether the dispute is a government claim or a contractor claim, but the CDA seems to contemplate precisely such a distinction. Cecile maintains that the money is being "illegally" withheld; thus, Cecile, not DPSC, is making a claim. The court is at a loss to see how DPSC's failure to pay invoices is either a demand for payment or the seeking of relief arising under or relating to a contract.

With respect to contract 2851 there is also no dispute cognizable under the CDA. Plaintiff does not argue that the termination was improper, nor does it contest the amount of liquidated damages assessed. Plaintiff's contention that the withholding violates the procedural protections of the DCA cannot be transmuted into a government claim.

The CDA is a limited waiver of sovereign immunity, and as such, it should be strictly construed. *See, e.g., Soriano v. United States,* 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). Exceptions to the limitations and conditions under which the government consents to be sued should not be implied. *Brookfield Construction Co. v. United States,* 228 Ct.Cl. 551, 661 F.2d 159 (1981). This court has ruled that intracontractual withholding is not subject to DCA procedures, *Avco Corp. v. United States,* 10 Cl.Ct. 665 (1986), but it cannot reach the novel question of whether Cecile was entitled to DCA notice and hearing protections when the government exercised its power of administrative offset intercontractually, since plaintiff has failed to present a written claim to the CO.

## CONCLUSION

There is no government claim cognizable under the CDA over which the court can assert jurisdiction. To the extent that plaintiff alleges a claim against the government, plaintiff has failed to satisfy the jurisdictional prerequisite of submitting a claim to the CO. Accordingly, the clerk of the court is directed to dismiss plaintiff's complaint.

---

5. The FAR provision in effect at the time Cecile filed the instant complaint is virtually identical to the provision quoted.