The SHARMAN COMPANY,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–108 C.

United States Claims Court.

Dec. 20, 1991.

---

**25.** 5 U.S.C. § 706 (1988).

**26.** *Rice v. Wilcox,* 630 F.2d 586, 589 (8th Cir. 1980).

**27.** *See Hines v. Secretary of HHS,* 940 F.2d 1518, 1524 (Fed.Cir.1991).

Robert E. Steinberg, Washington, D.C., Atty. of Record, for plaintiff.

Shalom Brilliant, with whom were Asst. Director Thomas W. Peterson, Director David M. Cohen, Asst. Atty. Gen. Stuart M. Gerson, Dept. of Justice, Washington, D.C., and Mary C. Bell, U.S. Marine Corps, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

This government contract suit comes before the court on defendant's motion to

dismiss for lack of subject matter jurisdiction. The contention is that the complaint does not present a claim for money presently due and, therefore, is essentially a demand for declaratory relief—a form of relief not generally available here. Plaintiff opposes the motion and, in addition, seeks a stay of proceedings and an order remanding the case to the contracting officer.

For the reasons explained below, defendant's motion is granted in part and denied in part. We also deny, on grounds of prematurity, plaintiff's motion for a stay of proceedings, and we deny, for lack of jurisdiction, plaintiff's motion for a remand to the contracting officer.

I

Plaintiff is a government contractor whose contract for the manufacture of steel water tanks for the United States Marine Corps was terminated for default through a notice of termination and final decision issued by the contracting officer on July 27, 1989.

In a follow-up letter to the contractor some six weeks later (September 12, 1989), the contracting officer served a "notice of demand for payment of contract debt." The letter informed Sharman that the "Defense Contract Administration Services Region (DCASR), Atlanta has determined that the Sharman Company has been overpaid progress payments in the amount of $2,066,696.36." The letter went on to state that "if the amount identified above has not been paid within 30 days from the date of the demand, interest will incur and will be computed from the date of the demand." Sharman was also told that it could submit a proposal for deferment of collection "if immediate payment is not practicable or if the amount is disputed." Finally, the letter gave Sharman the name of the individual responsible for determining the amount of the debt and for its collection.

The contractor did not seek a deferment of collection or otherwise dispute the amount asserted. Instead, it responded by bringing suit. In a complaint filed here on February 2, 1990, Sharman sought invalida-

tion of the default termination, conversion of the termination to one for Government convenience and recovery of all uncompensated costs incurred in the contract's performance.

The Government answered the complaint and then, on June 25, 1990, filed the motion to dismiss now before the court. Action on the motion was postponed in order to afford the parties an opportunity to explore settlement. However, settlement proved unattainable, and thus we now confront the specifics of the Government's jurisdictional arguments.

As background to those arguments, one additional fact needs to be added to the recitation of events noted above. On October 18, 1990 (while the parties were still engaged in their settlement efforts), the contracting officer sent plaintiff a second letter concerning the unliquidated progress payments. Unlike the first demand letter, this one described itself as a "notice of the Contracting Officer's final decision," and it now identified the amount owed by Sharman as $1,391,240.29. Sharman was asked to make payment of this amount. The letter concluded by advising the contractor that questions concerning the repayment demand should be directed to the Department of Justice trial attorney assigned to the case or to the agency counsel assisting the Department's attorney.

II

*Defendant's Motion To Dismiss.*

The Government's motion raises two points. First, the Government contends that the grievance presented in the complaint is basically an attack upon the default termination, unaccompanied by a money claim, and is, therefore, simply a demand for declaratory relief over which the court has no jurisdiction. Second, the Government contends that, even if plaintiff's complaint is read as including a demand for relief from the debt asserted in the contracting officer's letter of September 12, 1989, that would not remedy the jurisdictional difficulty in the complaint. It would not offer a remedy, maintains defen-

dant, because the letter was not issued as a contracting officer's "final decision" and thus cannot serve as the basis for a claim here.

■ We agree only with the Government's first argument, not the second. Defendant is right in saying that under the Tucker Act, 28 U.S.C. § 1491 (1988) (the court's basic jurisdictional statute), it is not enough that the transaction sued on implicate a right to money or be money-related. Rather, to invoke our jurisdiction, the entitlement claimed must be for "actual, presently due money damages." *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). To put it more precisely, the allegation "must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum," or the claim "must assert that the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967).

■ Moreover, where the entitlement claimed derives from a contract that is subject to the provisions of the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1988)—the case here—then the adjudication of that entitlement is conditioned upon exhaustion of administrative requirements. Specifically, the Contract Disputes Act requires that the claim sued on (whether presented in court or before a contract appeals board) be one that was "submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). Absent submission of a claim to the contracting officer for a decision, the court cannot hear the claim. *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 184, 645 F.2d 966, 971 (1981). Thus, to gain a jurisdictional foothold here, a plaintiff pursuing a contract claim against the Government must satisfy both of the court's fundamental jurisdictional requirements—that the claim be for money

presently due and that a "decision" on the claim have been entered in accordance with the Contract Disputes Act.

■ Plaintiff's demand for convenience termination damages meets neither of these requirements—the claim was never quantified and the claim was never submitted to the contracting officer for decision. Hence, it cannot be adjudicated here.

■ Nor is it any longer open to argument that a challenge to a contracting officer's final decision on a default termination is, of itself, sufficient to satisfy these prerequisites to suit. That contention was put to rest in *Overall Roofing & Construction, Inc. v. United States*, 929 F.2d 687, 689 (Fed.Cir.1991), where the court of appeals held that the jurisdictional necessity for a claim asserting "a right to presently due money" could not be satisfied by "a naked appeal from a termination for default." In other words, even though a default (if erroneous) could logically be viewed as a breach giving rise to a claim for damages, the absence of a specific money demand forecloses the possibility of relief by money judgment and therefore leaves the court without power to act.

Moving on then to the second part of the motion to dismiss, defendant contends that jurisdictional difficulties remain even if the complaint is read to include a request for relief from the contracting officer's repayment demand, *i.e.*, read as a contractor's suit on a Government claim.[1] It is pointed out that, at the time plaintiff filed suit here, the indebtedness asserted by the Government had not been cast in the form of a contracting officer's final decision. (Such a decision was not issued until more than six months after this suit was filed). Therefore, argues defendant, since a court's jurisdiction over a controversy is determined by the facts in place at the time suit is brought, it follows that the absence, at that time, of a contracting officer's decision on the repayment demand renders

---

1. The court's authority to hear contractor suits involving Government claims is established by 28 U.S.C. § 1491(a)(2) which provides that "[t]he Claims Court shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978."

plaintiff's suit on the Government's claim premature.

 We cannot endorse this argument. Once the Government has decided to terminate a contract for default and has issued a contracting officer's decision to that effect, the boundaries of a Government claim, as defined by procurement regulations,[2] have been marked out. The issuance, thereafter, of a contracting officer's demand for return of unliquidated progress payments is simply a quantification of the Government's claim rather than the assertion of a new or different demand.

Granted, such quantification is essential to permitting a suit on a default termination to go forward here since the jurisdictional requirement of a presently enforceable money demand applies whether the contractor is seeking an affirmative recovery or the disallowance of a Government demand. No statute or regulation, however, obliges the Government, once having issued a final decision on a default termination, to preface the exercise of its various remedies under the default clause with separate final decision labels.

Rather, what the regulations do require is precisely what was accomplished by the contracting officer's letter of September 12, 1989: timely assertion of a repayment demand. *See, e.g.,* 48 C.F.R. § 32.610(a) (1990) ("If the debt arises from excess [reprocurement] costs for a default termination, the demand shall be made without delay...."); 48 C.F.R. § 49.402–7(a) (1990) ("If a contract is terminated for default ... the contracting officer shall promptly ascertain and make demand for any liquidated damages...."); and 48 C.F.R. § 52.-232–16 (1990) Progress Payments [Clause] (Aug. 1987) ("(h) *Special terms regarding default.* If this contract is terminated under the Default clause ... the contractor shall, on demand, repay to the Government the amount of unliquidated progress payments....").

Clearly, these regulations do not call for the issuance of a supplementary final decision each time a contracting officer asserts the monetary remedies consequent to a default termination. Indeed, there could be no logical necessity for such a requirement. Where only one dispute exists, only one decision is necessary.

The Government purports to find a different answer in the procurement regulations. Specifically, we are referred to sections 32.608 and 32.606 of the Federal Acquisition Regulations. The contention is that these two sections, when taken together, demonstrate both the necessity for a contracting officer's final decision on a repayment demand and that the contracting officer's letter of September 12, 1989 was not such a decision.

The first of the regulations relied on, 48 C.F.R. § 32.608 (1990), is captioned "Negotiation of contract debts." Subpart (c) of this regulation directs a contracting officer, when making a unilateral determination of indebtedness, to issue his decision under the Disputes Clause and to include in his decision a demand for payment. The regulation also states—and these are the words defendant finds important—"[n]o demand for repayment ... shall be issued prior to a contracting officer's final decision."

The other regulation that bears on the argument, 48 C.F.R. § 32.606, is captioned "Debt determination and collection." This regulation provides, in substance, that in instances where there is an indication of a contract debt, a responsible official (elsewhere identified as generally being the contracting officer) is to promptly ascertain whether a debt actually exists and, if so, to determine its amount by considering the Government's claim as well as any contractor claims. The regulation goes on to say—and here again are the words defendant's argument stresses—"[t]his determination does not constitute ... a contracting officer's final determination." 48 C.F.R. § 32.606(b).

---

**2.** A "claim", as defined in the Federal Acquisition Regulations, "means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 33.201 (1990).

Putting the two regulations together, the position defendant comes to is that the contracting officer's letter of September 12, 1989 was a "determination" within the meaning of section 32.606(b) of the regulation, and, further, that such a determination, when unaccompanied by a contracting officer's final decision, is not a demand upon which suit may be brought. In defendant's view, such a determination, even one that exposes the contractor to the accrual of interest for non-payment, is really no more than a notice to the contractor and, hence, simply a prologue for discussion.

Defendant's reliance on these regulations is misplaced. Section 32.606, as its caption makes clear, is concerned with the procedures for debt determination and collection. Notice to the contractor of the Government's tentative determination of amount is a step implicitly sanctioned (but not expressly called out) by the provisions of this regulation. And, as the case law reveals, where such notices are issued, they are appropriately identified as tentative determinations issued to invite contractor comment rather than as final decisions. *See, e.g., Crippen & Graen Corp. v. United States*, 18 Cl.Ct. 237, 240 (1989); *Dailing Roofing, Inc.*, 89-1 B.C.A. (CCH) ¶ 21,311, at 107,473.

Section 32.608 is the complement to section 32.606. Again, as its title reveals, this section is concerned with the negotiation of contract debts. Subpart (c) (the part cited by defendant) sets out the decisional requirements to be met in situations where the amount of indebtedness asserted by the Government has been the subject of an unsuccessful negotiation with the contractor. It is in this special circumstance, *i.e.*, where the *amount* of the Government's claim becomes the subject of a dispute between the parties, that the regulations call for the contracting officer's unilateral determination to be put in the form of a final decision.

We do not have such a case here. Sharman does not attack the amount of the Government's demand but, rather, the Government's right to assert such a demand in the first instance. In other words, it is the legitimacy of the default and not the dollars associated with that action that brings Sharman into court. Sharman's position (among others) is that it owes the Government nothing because the default has no validity.

Notwithstanding the administrative sufficiency of the letter of September 12, 1989, the contracting officer went on to eventually issue a final decision, reasserting the Government's repayment demand (but now at a reduced amount). Does the issuance of this "final" decision render the demand letter of September 12, 1989 non-final and therefore displace it as an appropriate basis for suit here?

■ The answer is no. As the facts reveal, the contractor never took issue with the amount of the Government's demand. Hence, there was no occasion for the issuance of a final decision; it was neither required by regulation nor warranted by the facts. That the decision sets out a different amount than that first presented to the contractor is also irrelevant. This was a change the contracting officer had come to on his own rather than as a result of any negotiations with the contractor. Thus, for all that appears, the decision was simply an afterthought—one inspired perhaps by an assumed defect in the enforceability of the Government's earlier demand. We accord it no significance.

The case is properly before us now as a contractor's suit on a quantified Government claim.

*Plaintiff's Motion for Suspension of Proceedings and Remand To The Contracting Officer.*

Plaintiff's motion is prompted by the following facts: On June 3, 1991, during the briefing of the instant motion to dismiss, Sharman submitted to the contracting officer a claim for convenience termination costs. (Presumably, the purpose of this submission was to correct what plaintiff had by now come to see as a necessary component to any affirmative recovery in this court, namely, a contracting officer's decision on its claim). The contracting officer did not act on the submission. Instead, by letter of June 12, 1991, Sharman was

advised by the contracting officer that his office "will not render any final decisions relating to your claim during the pending of litigation"—meaning this suit. It is this denial of a decision to which plaintiff's motion is addressed.

What Sharman would have us do is suspend the present action and simultaneously remand its claim for convenience damages to the contracting officer for a decision. As Sharman sees it, the remand can be accomplished under section 605(c)(5) of the Contract Disputes Act (authorizing the court to stay proceedings to obtain a contracting officer's decision), and the decision on the claim (expected to be adverse) could then be joined with the present suit. The benefit of such a procedure, says Sharman, is that it would remedy any jurisdictional defect the present action may contain and, at the same time, permit all claims to be resolved in one proceeding.

Defendant raises two arguments in opposition to plaintiff's motion. First, defendant says that where jurisdiction is lacking under the actual circumstances existing at the time a complaint is filed, the problem cannot be cured by an amendment introducing post-filing occurrences. Thus, continues defendant, if the complaint is jurisdictionally defective to start with, plaintiff's proposal offers no cure. Indeed, neither a suspension nor a remand would be possible. The court would have no option save to dismiss.

Although we agree with this argument, it no longer has any relevance here given the conclusion that was reached earlier in this opinion. The holding that this case can go forward as an action on a Government claim is an affirmation of our jurisdiction. It follows, therefore, that a suspension of proceedings to permit plaintiff's return to the contracting officer (if otherwise warranted) cannot be opposed as an impermissible exercise of the court's authority.

This then brings us to defendant's second argument. Defendant maintains that even if the court were to stay proceedings, a decision from the contracting officer would not be possible given that the convenience termination claim is presently before the court. Under these circumstances, that is, where a given controversy is the subject of litigation in court, it falls within the exclusive control of the Department of Justice; hence, it is outside of the contracting officer's authority.

Again, while we agree with this argument, its relevance here has been mooted by our conclusion that the complaint, as it now stands, does not present a claim for termination damages over which the court may exercise its jurisdiction. What is lacking is precisely that which plaintiff now hopes to secure: a contracting officer's decision on the claim.

■ Since it is our ruling that the convenience termination claim is not properly before the court, it follows that plaintiff is free to present that claim to the contracting officer, *Skelly & Loy v. United States*, 231 Ct.Cl. 370, 377, 685 F.2d 414, 419 (1982), and the contracting officer is free to decide it. The Department of Justice has no say over the matter; its right to control of the litigation extends only to matters pending in court. *Hughes Aircraft Co. v. United States*, 209 Ct.Cl. 446, 465, 534 F.2d 889, 901 (1976).

That the contractor's claim for termination damages may implicate the same facts as those involved in the controversy remaining before the court (*i.e.*, the Government's repayment demand) does not require a different conclusion. Though these claims may arise from the same transaction or series of events, they address, however, different rights to relief asserted by different parties. The court's jurisdiction over one branch of the controversy does not also give it jurisdiction over the other. The authority of the Department of Justice is similarly constrained.

For the reasons stated, plaintiff may resubmit its claim for convenience termination damages to the contracting officer. A remand order is neither necessary nor jurisdictionally appropriate. As to the request for a suspension of proceedings, this we deny (at least at this juncture) to await the resolution of the Government's demand for return of progress payments. Since the resolution of that demand will necessarily require a decision on the merits of the default termination, the outcome will there-

fore also be determinative of the termination for convenience claim.

### III

On the basis of the foregoing, defendant's motion to dismiss is granted in part and denied in part, plaintiff's motion for suspension of proceedings is denied, and plaintiff's motion for remand is also denied.