**The BOEING COMPANY, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 91–1077C.**

United States Claims Court.

March 10, 1992.

James J. Gallagher, Los Angeles, Cal., for plaintiff.

Martha H. DeGraff, Washington, D.C., with whom were Asst. Atty. Gen., Stuart M. Gerson, and Director David M. Cohen, for defendant.

## OPINION AND ORDER

ROBINSON, Judge:

This matter is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RUSCC 12(b)(1), and defendant's opposition to plaintiff's filing of a first amended complaint. Plaintiff, The Boeing Company (Boeing), seeks to retain $605,424,954.50 in progress payments paid by defendant prior to the partial termination for default of Contract No. F19628–85–C–0046 (contract), and various other payments allegedly due under the contract. Alternatively, plaintiff seeks a judgment converting the termination into one for convenience. Plaintiff maintains that jurisdiction exists under the Contract Disputes Act of 1978 (CDA) (now codified at 41 U.S.C. §§ 601–613 (1988) and 28 U.S.C. § 1491(a)(2) (1982)). Defendant contends that the court lacks jurisdiction under the CDA because plaintiff failed to submit a certified claim for money to the contracting officer (CO) for a final decision pursuant to 41 U.S.C. § 605(a). Defendant also argues that under RUSCC 27 plaintiff may not amend its complaint as a matter of right. For the reasons which follow, defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RUSCC 12(b)(1) is granted, and plaintiff's motion for leave to amend its preliminary complaint is denied.

### Procedural Background

The state of the pleadings in this case is, to say the least, peculiar. On April 11, 1991, plaintiff filed a preliminary complaint pursuant to RUSCC 27 alleging that it was unable to file a perfected complaint because of a lack of access to necessary documents.[1] Defendant filed its motion to dismiss on May 7, 1991, and plaintiff its opposition on July 10, 1991. On January 7, 1992, plaintiff filed what it titled a "First Amended and Substituted Complaint" to replace the preliminary complaint. Defendant's opposition to plaintiff's filing of a first amended complaint was filed on January 21, 1992. Plaintiff, two days after filing its amended complaint, filed a second complaint (No. 92–14C) on January 9, 1992, which is identical in all material respects to its amended complaint. On January 13, 1992, plaintiff filed its third complaint (No. 92–25C), which is similar but not identical to the preliminary, amended and second complaints. Plaintiff's fourth complaint (No. 92–69C), which is also related but not identical to the previously mentioned complaints, was filed January 30, 1992.

A status conference was held on January 24, 1992 in order to resolve the considerable confusion caused by plaintiff's zealous pursuit of a proper complaint. During that status conference, plaintiff's counsel admitted that the second complaint was a duplication of its first amended complaint. The court reminded plaintiff's counsel, at that time, of the following statement from plaintiff's notice of related case filed along with its second complaint:

> If for any reason, this Court finds a jurisdictional defect in Boeing's original Complaint, and further finds Boeing's First Amended and Substituted Com-

---

1. RUSCC 27(a) provides:

    (a) Preliminary Complaint.... When a plaintiff cannot state a case with the requisite particularity without an examination of documents or other information in the possession of the United States, and the plaintiff has been unable upon application to obtain a sufficient examination of such documents ... such plaintiff may file a complaint stating the plaintiff's claim as far as is in the plaintiff's power.

    If the court so orders, plaintiff may then conduct discovery necessary to file a perfected complaint. In the instant case, discovery was stayed on May 21, 1991 pending the resolution of defendant's motion to dismiss.

plaint to be ineffective to cure that defect, then this independent action will provide a valid basis for jurisdiction. If on the other hand, the Court ... exercises jurisdiction over Boeing's related case No. 91–1077C [the original complaint], this action may be dismissed.

The court then suggested, in light of plaintiff's admission that the second complaint was identical to the first amended complaint, and its contention that the second complaint is jurisdictionally proper, that the parties consider stipulating to a dismissal of the preliminary and amended complaints. The court believes that this procedure would have been the most efficient use of the time of all concerned. Unfortunately, efficiency rarely prevails in litigation. On January 31, 1992, the parties filed a joint status report in which plaintiff made clear its refusal to stipulate to a dismissal of its preliminary and amended complaints.[2] Accordingly, on March 5, 1992, the court heard oral argument on defendant's motion to dismiss plaintiff's preliminary complaint, and plaintiff's motion to amend its complaint.

*Factual Background*

Boeing Aerospace, a division of The Boeing Company, was awarded Contract No. F19628–85–C–0046 by the Electronic Systems Division of the United States Air Force Systems Command (Air Force) on February 25, 1985. Plaintiff agreed to design, develop, produce, integrate, install and test the prime mission equipment (PME) required for the "Peace Shield" program for the Kingdom of Saudi Arabia. This contract had an estimated value of $847,662,384.00.

The parties agreed that plaintiff would complete testing of the communication system within the continental United States (CONUS testing) within 35 months of the contract award. However, the parties subsequently extended the CONUS testing deadline to September 25, 1990, or 67 months after the original contract date.

The Air Force made progress payments to plaintiff from the date the contract commenced until October 1989. On October 27, 1989, the Air Force suspended further progress payments citing plaintiff's failure to complete the CONUS testing on time. On November 30, 1989, the CO issued a cure notice based upon this failure, warning that unless satisfactory progress was made within 30 days, the Air Force might terminate the contract for default. In two separate responses to the cure notice (December 22, 1989 and January 5, 1990), plaintiff disputed the allegations in the cure notice and asserted that it was making satisfactory progress on the contract.

On October 1, 1990, because plaintiff had failed to complete the CONUS testing by the September 25, 1990 deadline, the CO sent plaintiff a notice to show cause why the contract should not be terminated for default. On the same day, the CO sent two more cure notices for failure to perform. On December 7, 1990, plaintiff was notified that the contract had been referred to a termination contracting officer (TCO) for investigation.

On January 10, 1991, the TCO partially terminated the contract for default. On January 14, 1991, the TCO directed the Department of Defense Finance Office (Finance Office) to stop all payments to plaintiff. In a January 25, 1991 letter, the TCO demanded that plaintiff return $605,424,-954.50 in unliquidated progress payments. The final paragraph of that letter stated:

> If you have not presented any information concerning this demand or we have not received any payment within 30 days from the date of this notice, I will assume you have no comments or do not intend to make payment. Accordingly, *I will consider issuing a Final Decision on the above Demand for Payment.*[3]

Plaintiff requested a deferment of repayment on February 22, 1991, but did not

---

2. Plaintiff's decision was based upon defendant's expressed intention to file a motion to dismiss in the related action, *Boeing Co. v. United States,* Cl.Ct. No. 92–14C.

3. Defendant's Motion to Dismiss, Appendix, p. 29 (emphasis added).

request issuance of a final decision. The TCO has not yet acted upon the deferment request, nor has he issued any further decision upon the TCO's demand for repayment.

Following the contract termination, plaintiff tendered its work-in-process inventory to defendant. The TCO refused this tender under the "Default" clause of the contract. However, much of this inventory was listed in defendant's reprocurement solicitation. On March 22, 1991, defendant also denied plaintiff's request to execute a DD250 form for computer equipment purchased for the project but delivered after the termination. Plaintiff then instituted this suit on April 11, 1991. Subsequently, in a letter dated July 22, 1991, the TCO reiterated his position that he had rendered no final decision on the Government's demand for repayment.

### Contentions of the Parties

Defendant argues that plaintiff has failed to comply with the jurisdictional prerequisites of the CDA. In order for a contractor to establish jurisdiction in this court under the CDA, defendant states that there must be a claim, it must be in writing, it must be sent to the CO, and it must request a CO's final decision. 41 U.S.C. § 605(a). Defendant contends that plaintiff's preliminary complaint must be dismissed as plaintiff has not adhered to the mandates of section 605(a).[4] In its second motion, defendant argues that under RUSCC 27 a complaint may be amended only after the completion of discovery. Because no discovery was ordered in this case, defendant maintains that plaintiff cannot amend its complaint.

In response, plaintiff admits that it never submitted a certified *contractor* claim to the TCO, but asserts that it is appealing a

final decision on a *Government* claim for which certification is unnecessary. *See Placeway Constr. Corp. v. United States*, 920 F.2d 903, 906 (Fed.Cir.1990). Plaintiff argues that the following actions amount to Government claims: 1) the TCO's January 25, 1991 demand that plaintiff return the $605 million in progress payments; 2) defendant's failure to pay for the computers procured under the contract; 3) defendant's refusal to pay for work performed under the non-terminated portion of the contract; and 4) the rejection of plaintiff's work-in-process inventory at the time of the partial termination, coupled with defendant's constructive acceptance of that inventory by listing it in the reprocurement solicitation.

Thus, as plaintiff admits that it has not established jurisdiction under the CDA by submitting properly certified contractor claims, the court must determine whether the preliminary complaint is properly before this court as an appeal from a final decision on Government claims. If the answer is in the negative, the court must determine whether plaintiff's amended complaint corrects the jurisdictional defects of its preliminary complaint.

### DISCUSSION

In order to establish jurisdiction before the Claims Court, the entitlement claimed must be for "actual presently due money damages." *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). Where that entitlement is subject to the CDA, the claim must be submitted to the CO for a decision prior to bringing suit in this court. This is true whether the complaint alleges a Government claim or a contractor claim:

---

4. Alternatively, defendant argues that plaintiff's preliminary complaint is procedurally improper under RUSCC 27 and should be dismissed. The purpose of filing a preliminary complaint under RUSCC 27 is to allow a plaintiff who cannot state a case with the requisite particularity without an examination of documents in the government's possession the opportunity to obtain the necessary information, through discovery, to perfect its complaint. Because plaintiff, without having conducted discovery, is now able to state its claim with the requisite particularity for a perfected complaint, defendant maintains that RUSCC 27 was never an appropriate procedure under the circumstances of this case, and, accordingly, that plaintiff's preliminary complaint should be dismissed. However, the court need not reach the merits of this argument as it finds that plaintiff has failed to meet the jurisdictional requirements of the CDA.

All claims by a contractor against the government relating to a contract shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision of the contracting officer. The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter.

41 U.S.C. § 605(a). "Thus, to gain a jurisdictional foothold here, a plaintiff must satisfy both of the court's fundamental jurisdictional requirements—that the claim be for money presently due and that a 'decision' on the claim have been entered in accordance with the Contract Disputes Act." *Sharman Company, Inc. v. United States*, 24 Cl.Ct. 763, 767 (1991).

### 1. *The Progress Payments.*

■ It is well settled that a CO's decision on a default termination, unaccompanied by a claim for money damages, is insufficient to satisfy the prerequisites to suit under the CDA. *Overall Roofing & Constr., Inc. v. United States*, 929 F.2d 687, 689 (Fed.Cir.1991). Defendant argues that the only final decision issued in the instant case was on the default termination. Therefore, the TCO has not issued the requisite final decision upon any claim for money. Plaintiff counters that the TCO's January 25, 1991 post-termination demand for the progress payments was a final decision on a Government claim for money damages. Thus, the court must first determine whether the demand for the progress payments is a Government claim, and then whether the TCO's letter was a final decision thereon.

While there is no specific delineation of what constitutes a Government claim, the Federal Acquisitions Regulations (FAR) provide the following definition:

"Claim," ... means a written demand or a written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum

certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.

48 C.F.R. § 33.201 (1988).

In *Placeway Constr. Corp. v. United States*, 18 Cl.Ct. 159 (1989), the Claims Court held that a written notification of a right of set-off on a balance due on the contract was "tantamount to seeking 'the adjustment ... of contract terms.'" *Placeway Constr. Corp. v. United States*, 18 Cl.Ct. 159, 164 (1989) (quoting 48 C.F.R. § 33.201). In the instant case, the court agrees with plaintiff that the TCO's demand for the progress payments amounts to a Government claim as it was a written demand "seeking ... the payment of money in a sum certain," namely $605 million. 48 C.F.R. § 33.201. However, the court is not persuaded that the TCO's demand letter was a final decision on that Government claim.

Plaintiff argues that the demand letter is a final decision which simply lacks the boilerplate language (i.e. designation of the letter as a "final decision" and notice of appeal rights). In *Placeway*, the Court of Appeals for the Federal Circuit (Federal Circuit) held that the CO's letter asserting a right of set-off (the contract price balance due was not released because Placeway had failed to complete the project in a timely manner) was a final decision under the CDA. The Federal Circuit noted that the CO's letter finally determined both liability and damages as it "concluded that Placeway was liable because of delayed performance and effectively ruled that damages would be the contract balance.... The decision is no less final because it failed to include boilerplate language usually present for the protection of the contractor (such as notice of appeal rights)." *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed.Cir.1990). Plaintiff argues that *Placeway* effectively disposes of defendant's jurisdictional arguments. The court disagrees.

The instant case is distinguishable from *Placeway*. The TCO's demand letter did not simply omit standard clauses but rather affirmatively stated that it was not a final

decision. Instead of lacking a "Final Decision" label, the demand stated that

> [i]f you have not presented any information concerning this demand or we have not received payment within 30 days from the date of this notice, I will assume you have no comments or do not intend to make payment. Accordingly, I will consider issuing a Final Decision on the above demand for repayment.

Thus, it is readily apparent that the TCO was not rendering a final decision, but rather, was seeking further information from plaintiff before deciding how to proceed.[5]

In *Crippen & Graen Corp. v. United States*, 18 Cl.Ct. 237 (1989), the court held that a demand letter much like the one at issue here was not a final decision. That letter stated:

> If it is your intention to dispute the assessment of this sum, you are invited to submit whatever facts are deemed relevant to the contracting officer within 30 days of receipt of this letter. If no response is received, it will be assumed that you dispute this amount, and a final decision will be issued in pursuit of an affirmative government claim.

*Crippen & Graen Corp. v. United States*, 18 Cl.Ct. 237, 238 (1989). Hence, the clear intent of the demand was to "allow the contracting officer to gather and consider all relevant information concerning the dispute in rendering a final decision." *Crippen & Graen Corp. v. United States*, 18 Cl.Ct. 237, 240 (1989).[6]

The opportunity to consider all relevant information prior to issuing a final decision is precisely the function which the CDA jurisdictional requirements are intended to promote. Prior to issuing a final decision, the CO serves as the Government's representative in contract negotiations. Thus, it is incumbent upon the CO to gather all relevant data in order to negotiate a settlement. In rendering a final decision under the CDA, the CO acts in a quasi-judicial capacity, determining the liability and damages. *See* John Cibinic, Jr. & Ralph C. Nash, Jr., ADMINISTRATION OF GOVERNMENT CONTRACTS 926 (2d Ed.1985). Construing the TCO's demand letter in the instant case to be a final decision is not only contrary to its express language but ignores the CDA policy of encouraging settlement.[7]

Plaintiff alternatively argues that the demand letter became final by its terms 30 days after issuance. This argument ignores the fact that the TCO gave plaintiff 30 days to respond after which time he would "consider" making a final decision.

---

5. It should be noted that this court, in *Sharman Co. v. United States*, 24 Cl.Ct. 763 (1991), recently held that a followup letter to the CO's notice of termination and final decision operated as a quantification of the Government's claim essential to permitting a suit on a default termination to go forward in the United States Claims Court. Stated otherwise, the court held that the CO's letter served as a "final decision", and, therefore, as a basis for a claim for CDA certification purposes. Specifically, that letter identified an amount allegedly due in overpaid progress payments, stated that interest would accrue 30 days from the date of the demand and, in all respects, served as a notice of "demand for payment of contract debt". 48 C.F.R. § 32.610 (1990). The factual situation in *Sharman* is distinguishable from the case at hand in that the CO in *Sharman* did not request information concerning the demand for payment, nor indicate that a final decision would be forthcoming if no comments were made. In fact, the TCO in this case reiterated, in his letter to plaintiff dated July 22, 1991, that his demand for payment notice of January 25, 1991 was not a final decision.

6. Plaintiff argues that *Crippen & Graen* has been tacitly overruled by *Overall Roofing*. As stated above, the Federal Circuit held in *Overall Roofing* that the Claims Court lacks jurisdiction over a suit challenging a default termination which is unaccompanied by a claim for money damages. *Overall Roofing & Constr., Inc. v. United States*, 929 F.2d 687, 689 (Fed.Cir.1991). *Crippen & Graen* held that the Claims Court had such jurisdiction, in addition to holding that the demand letter was not a final decision. *Crippen & Graen Corp. v. United States*, 18 Cl.Ct. 237, 240 (1989). Thus, *Overall Roofing* does, in fact, supersede the contrary holding in *Crippen & Graen*. *Overall Roofing*, however, did not effect *Crippen & Graen's* ruling on the finality of a demand letter.

7. "It is still the policy of Congress that contractor claims should be resolved by mutual agreement, in lieu of litigation, to the maximum extent possible." 124 Cong.Rec.H., at 10725 (1978).

The letter did not establish a time by which the TCO would render a final decision. Plaintiff next argues, with the advantage of hindsight, that not construing the TCO's letter as a final decision would result in a waste of judicial resources. However, such waste may have been reduced if not eliminated had plaintiff responded differently to the TCO's letter. Also, the court finds this argument somewhat ironic in light of plaintiff's submission of admittedly duplicative pleadings and its refusal to stipulate to a dismissal of its preliminary and first amended complaints.

The TCO's letter of January 25, 1991 is clearly not a final decision satisfying the CDA jurisdictional requirements for a Government claim. Unlike the letter in *Placeway*, which merely lacked some standard phrasing, the TCO's letter in this case explicitly stated that it was not a final decision. The TCO requested a response from plaintiff before considering whether to issue a final decision. Instead of waiting to obtain a final decision on the Government's claim, or alternatively, requesting the TCO to issue a final decision on its own claim, plaintiff took the premature action of filing its preliminary complaint. As a result, the issue of whether plaintiff is entitled to retain the unliquidated progress payments is not properly before the court. 41 U.S.C. § 605(a). Moreover, without jurisdiction over a claim for money damages, *Overall Roofing* precludes the court from reviewing the TCO's decision on the default termination.

### 2. *The Computers.*

■ Following the partial contract termination, plaintiff submitted a DD250 form requesting payment for the computer equipment. Defendant refused to make such payments based on paragraph (f) of the contract's default clause, which requires the Government to only pay for supplies delivered and accepted prior to termination. Plaintiff alleges that because defendant's action was taken pursuant to the default clause of the contract, it constitutes a final decision on a Government claim in

its own right. Plaintiff cites *Placeway Constr. Corp. v. United States*, 920 F.2d 903 (Fed.Cir.1990), and *Nuclear Research Corp. v. United States*, 814 F.2d 647 (Fed. Cir.1987) in support of its contention that a default termination coupled with assertions of contractual rights amounts to a final decision. However, this argument fails because plaintiff's claim for payment on the computers is not a Government claim and because it ignores the clear rule of *Overall Roofing*.

As explained above, a "claim" under the CDA is a written demand or assertion, by either party, seeking payment of a sum certain. 48 C.F.R. § 33.201. Plaintiff's submission of a DD250 requesting $1,853,-352.00 for three "vax" computers clearly qualifies as a contractor claim under the CDA. As plaintiff has admitted that it never submitted a certified claim to the TCO for a final decision on the computer claim, this court has no jurisdiction to resolve the claim. *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 183–84, 645 F.2d 966, 971 (1981).

However, even assuming that the computer claim somehow belongs to defendant, *Overall Roofing* clearly precludes this court's jurisdiction to consider it. "To construe 'claim' as contemplating a naked appeal from a termination for default would also render [the strict limitation of the Claims Court's declaratory judgment power] superfluous." *Overall Roofing & Constr., Inc. v. United States*, 929 F.2d 687, 689 (Fed.Cir.1991). Thus a claim must be for "money presently due and owing." *Overall Roofing & Constr., Inc. v. United States*, 929 F.2d 687, 689 (Fed.Cir.1991). Plaintiff is unable to point to any Government claim for money presently due and owing on the computers. Moreover, the absence of an executed DD250 for the computers, without more, can hardly be considered a final decision. Both *Placeway* and *Nuclear Research* relied on the presence of a final decision on a claim for a sum certain. Mere reliance on a default clause certainly does not come within the narrow holdings of those cases.[8] Accord-

---

**8.** In *Placeway*, of course, the Federal Circuit

agreed that defendant's asserted right of a set-

ingly, the court lacks jurisdiction to entertain the computer claim.

### 3. The Non–Terminated Portion of the Contract.

Plaintiff argues that it has been performing work on the non-terminated portion of the contract but has not been paid since progress payments were suspended on October 27, 1989. Plaintiff concludes that the TCO's direction to the Finance Office not to pay for that work is a *constructive* set-off which establishes jurisdiction under *Placeway*. Defendant disputes this contention, and points out that plaintiff has received numerous and substantial payments on the non-terminated portion of the contract. Def. Reply App. 48–54. While not conceding its contention, plaintiff acknowledged at oral argument that defendant, since the filing of plaintiff's response to defendant's Motion to Dismiss, has made minor payments on the non-terminated portions of the contract.

The amount of work that plaintiff has performed without compensation is unclear. Certainly, however, no negotiation has occurred with respect to the suspension of payment for this work. To treat the TCO's suspension of payment for an unidentified amount of completed work under the non-terminated portion of the contract as tantamount to a constructive set-off reads far too much into the TCO's instruction to the Finance Office and in our view stretches *Placeway* well beyond its limits. Accordingly, the court holds that the suspension of payment in this case is not equivalent to a set-off and, therefore, does not amount to a CO's final decision on liability and damages, as found in *Place-*

way.[9] Once again, plaintiff's request for payment is more closely akin to a contractor claim for payment, which must be properly certified and submitted to the TCO for a final decision. Only after that decision is rendered, either as a denial or a deemed denial, may jurisdiction exist in this court.

### 4. The Work–in–Process Inventory.

Plaintiff finally argues that defendant's refusal of the work-in-process inventory, and subsequent listing of the materials in the reprocurement solicitation, also constitutes a final decision on a Government claim under *Placeway*. At the risk of being redundant, the court again expresses its opinion that plaintiff is asserting a contractor claim. Plaintiff states that "[t]he TCO is obviously attempting to circumvent the requirement contained in subparagraph (e) of the 'default' clause, which *requires* the Government to pay the terminated contractor for any manufacturing materials actually used by the Government." [10] Plaintiff undeniably has a right to be reimbursed for the manufacturing materials it is required to supply to defendant. If plaintiff is not paid for the materials defendant selects for reprocurement, plaintiff will then have a claim for payment which it will have to submit and certify to the TCO in accordance with the CDA. Until that time, the court has no jurisdiction to consider plaintiff's demand for payment for the manufacturing materials.

Turning to plaintiff's contention that its amended complaint remedies any jurisdictional defect in the original complaint, the United States Supreme Court has specifically stated that federal jurisdic-

off was a Government claim, which requires no certification. In *Nuclear Research,* the issue was whether the Armed Services Board of Contract Appeals (ASBCA) had jurisdiction over an appeal from the CO's decision on default termination even though it did not involve a claim for money. The Federal Circuit found that the ASBCA properly exercised jurisdiction over both the default termination decision and the return of unliquidated progress payments decision because the net amount of money owed by Nuclear Research was dependent on the propriety of the CO's decision to terminate the contract for default.

9. In *Placeway,* the Federal Circuit at least partially based its conclusion that the CO effectively made a final decision on a Government claim on the fact that plaintiff had completed performance of the contract. In this case performance of the contract had not been completed prior to partial termination for default nor has performance of the non-terminated portion of the contract been completed.

10. Pl.Opp. to Def.Motn. at 34 (emphasis in the original).

tion "depends on the state of things at the time the action is brought." *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113–14 n. 1, 1 L.Ed.2d 1205 (1954) (quoting Chief Justice Marshall in *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154). Therefore, the facts establishing jurisdiction must exist when the suit is filed and defects in jurisdiction cannot be cured by post-filing occurrences. *U.N.R. Indus. Inc. v. United States*, 911 F.2d 654, 668 (Fed.Cir.1990). Accordingly, the court may permit amendment of a complaint to remedy inadequate jurisdictional allegations only, not actual defects in jurisdiction. Plaintiff's attempt to submit a certified claim to the TCO while its preliminary complaint is pending is simply of no avail. This conclusion was adopted by the Federal Circuit which held in *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338 (Fed. Cir.1983) that retroactive certification has been deemed ineffective under the CDA and does not remedy plaintiff's original failure to certify its demand.[11] In sum, plaintiff cannot cure the lack of certification defect by bringing the same demand, now certified, before the TCO who no longer has authority to act upon such demand, waiting the requisite sixty (60) days, and then amending its complaint.

## CONCLUSION

The court finds that plaintiff has failed to establish jurisdiction over its preliminary complaint, and cannot amend its complaint as a matter of right. As there has been no final decision by the TCO on plaintiff's assertion that it is entitled to retain the $605 million in progress payments, such claim, as a Government claim, has not yet ripened for Claims Court review. As for the payments allegedly due on the computers, the work done on the non-terminated portion of the contract, and on the work-in-process inventory, the court finds that rather than being Government claims which have been the subject of constructive final decisions by the TCO, these are contractor claims which also must be submitted and certified for a final decision of the TCO prior to review by this court.[12] Accordingly, for the reasons expressed above, the court grants defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction on the ground that plaintiff has not complied with the CDA, and denies plaintiff's motion for leave to amend its complaint to cure the lack of certification defect.

The Clerk of the Court is directed to dismiss plaintiff's preliminary and first amended complaints without prejudice. No costs.

11. It is also settled that a contracting officer is divested of his authority over plaintiff's claim once that claim is filed as a suit in this court. *Durable Metal Prods., Inc. v. United States*, 21 Cl.Ct. 41, 46 (1990). Therefore, the CO had no authority to render a decision on plaintiff's allegedly certified claim.

12. The court is, of course, mindful of the severe financial consequences to plaintiff from our dismissal due to the amount of interest that plaintiff must necessarily forego should it ultimately be required to abandon this suit and submit another certified claim to the TCO. Also, there being no prescribed form for a CO's final decision under the CDA, the court is especially cognizant of the reliance it has placed upon the particular words chosen by the TCO in his January 25, 1991 letter. Finally, we are acutely aware of the power over contractor claims which our holding impliedly accords to the CO. However, as a quasi-judicial official, a CO is obligated to act fairly and in good faith toward a contractor, even though he or she is also acting on behalf of the Government. In this case, the court is convinced that while accepting all of plaintiff's factual allegations as true, as this court is required to do, the TCO in this case truly did not intend to issue a final decision and acted in good faith in inviting negotiations with plaintiff. Although he no longer had the power to act in the matter after suit was filed, the court believes that his letter of July 22, 1991 further supports our conclusions as to his intent.