**CORPORATE AIR, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–377C.**

United States Claims Court.

May 12, 1992.

Peter M. Kilcullen, Washington, D.C., for plaintiff.

Peter Mulhern, Washington, D.C., for defendant.

## REVISED ORDER TO SHOW CAUSE [1]

WEINSTEIN, Judge.

The parties' cursory responses to the court's order of November 27, 1991, which *sua sponte* [2] raised the question of subject matter jurisdiction, do not persuade this court that it has jurisdiction over plaintiff's complaint.[3]

The complaint requests a declaratory judgment that the government's May 5, and June 9, 1989 default terminations of two contracts be declared improper and be converted into terminations for convenience and that, accordingly, or because of the government's failure to mitigate, plaintiff, Corporate Air, does not owe the government the sum of $96,681, which it was billed on December 13, 1989, for the government's excess reprocurement costs. The complaint also prays for damages in an unspecified amount for the government's alleged termination for convenience, and associated attorney's fees and costs.[4] Defendant has counterclaimed for the reprocurement costs.[5]

Accordingly, plaintiff shall show cause on or before June 1, 1992 why this court should not dismiss its complaint for lack of subject matter jurisdiction, addressing the following legal principles and setting out any material facts that may differ from those appearing from the record currently before this court and described below.

(1) The complaint is for breach of a contract that is subject to the Contract Dis-

---

1. The show cause order originally was issued as an unpublished order on April 30, 1992. This revised order incorporates minor corrections.

2. *See, e.g., Huston v. United States,* 956 F.2d 259 (Fed.Cir.1992); *Hambsch v. United States,* 857 F.2d 763, 763–65 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1054, 109 S.Ct. 1969, 104 L.Ed.2d 437 (1989).

3. Needless to say, defendant's agreement that jurisdiction is proper is of no benefit to plaintiff, since government officials cannot bestow jurisdiction by consent or waiver. *See, e.g., United States v. United States Fidelity & Guar. Co.,* 309 U.S. 506, 513, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940); *Munro v. United States,* 303 U.S. 36, 41, 58 S.Ct. 421, 423, 82 L.Ed. 633 (1938); *see also United States v. Grumman Aerospace Corp.,* 927 F.2d 575, 580 (Fed.Cir.1991) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1985) (jurisdiction may be addressed at any time)).

4. Because the complaint contains no allegation that a claim for monetary damages *in a sum certain* ever was presented by plaintiff to the contracting officer for final decision, this court has no jurisdiction over the contractor's money damages claim under the CDA. *See* §§ 605(a), 609(a)(1); Federal Acquisition Regulation (FAR), 48 C.F.R. § 33.201 (1991); *cf. Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987) (claim must contain "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis *and amount* of the claim") (emphasis added).

5. Government counterclaims do not survive dismissal of the complaint for lack of subject matter jurisdiction. *Somali Dev. Bank v. United States,* 508 F.2d 817, 822, 205 Ct.Cl. 741 (1974).

putes Act of 1978 (CDA).[6]  *See* § 602.

(2) The claim, seeking conversion of the default termination to one of convenience and a determination that plaintiff does not owe the billed excess reprocurement costs, is not a claim for actual money damages presently due to plaintiff, and thus does not state a claim under 28 U.S.C. § 1491(a)(1) (1988).  *See United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Glidden Co. v. Zdanok,* 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962); *Overall Roofing & Constr., Inc. v. United States,* 929 F.2d 687 (Fed.Cir.1991); *Paragon Energy Corp. v. United States,* 645 F.2d 966, 227 Ct.Cl. 176 (1981).  (Plaintiff concedes this.)

(3) It is axiomatic that a request for a determination that a plaintiff does *not* owe a sum of money to another is a request for declaratory relief over which this court may not exercise jurisdiction.[7]  *See, e.g., Foote Mineral Co. v. United States,* 654 F.2d 81, 87, 228 Ct.Cl. 230 (1981) (denying plaintiff's request for relief that would require court to declare that plaintiff "owes no royalties on [minerals] that will be mined in the future"); *O'Brien Gear & Mach. Co. v. United States,* 591 F.2d 666, 219 Ct.Cl. 187 (1979); *In re Palmetto Enters., Inc.,* 221 Ct.Cl. 875, 876 (1979) (dismissing petition for lack of subject matter jurisdiction where plaintiff sought review of officer's assessment of excess reprocurement costs, which plaintiff had not paid); *In re Computer Wholesale Corp.,* 566 F.2d 1189, 214 Ct.Cl. 786 (1977).

(4) This court's jurisdiction is statutory and is based on the government's waiver of sovereign immunity.  Statutory waivers of sovereign immunity must be unequivocally expressed and are to be strictly construed in favor of the government.  *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 432, 110 S.Ct. 2465, 2475, 110 L.Ed.2d 387 (1990); *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *King,* 395 U.S. at 4–5, 89 S.Ct.

at 1502–1503; *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

(5) The Tucker Act of 1887, ch. 359, § 1, 24 Stat. 505 (current version at 28 U.S.C. § 1491(a)(1)), did not explicitly waive the government's sovereign immunity so as to permit this court to grant relief in the form of a declaratory judgment, and has never been construed to have done so.  *See, e.g., King,* 395 U.S. at 4–5, 89 S.Ct. at 1502–1503 ("the passage of Tucker Act in 1887 had not expanded that jurisdiction to equitable matters") (citing *United States v. Jones,* 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90 (1889)); *United States v. Alire,* 73 U.S. (6 Wall.) 573, 575, 18 L.Ed. 947 (1867).

(6) This court's limited subject matter jurisdiction under the Tucker Act also was not enlarged or expanded so as to encompass requests for declaratory relief in cases brought after contract award—by either the CDA or the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164 (1982) (FCIA) (codified in scattered sections of title 28).  See, *e.g.,* the discussion of legislative history in *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1369–72 (Fed.Cir.1983) (noting: (1) that the only expansion of equitable jurisdiction granted to this court since the 1969 *King* decision was the FCIA amendment to the Tucker Act, which extended equitable authority *only* to preaward bid protest cases, and (2) that Congress considered, but decided against, giving the Claims Court declaratory judgment authority in either the 1978 or 1982 Act); *accord Overall Roofing,* 929 F.2d at 690 (concluding that it would be "singularly inappropriate for [the Federal Circuit] to invest the Claims Court with the authority Congress has specifically, intentionally and repeatedly withheld").

(7) Even assuming, *arguendo,* that the CDA renders the last sentence of 28 U.S.C. § 1491(a)(2) ambiguous, it may not be read as waiving the government's sovereign im-

---

6. 41 U.S.C. §§ 601–613 (1988).

7. Alternatively, a request for a judgment that it does not owe the government money is tantamount to a request to restrain the government's

actions and, as such, an equitable action beyond this court's jurisdiction.  *See, e.g., Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949).

munity to suits based upon a "government claim" against a contractor, because such a reading would effectively repeal a previous statute (*i.e.*, the Tucker Act, 28 U.S.C. § 1491(a)(1)) by implication, and repeals by implication are strongly disfavored. *See Traynor v. Turnage*, 485 U.S. 535, 547, 108 S.Ct. 1372, 1381, 99 L.Ed.2d 618 (1988); *United States v. Fausto*, 484 U.S. 439, 452, 108 S.Ct. 668, 676, 98 L.Ed.2d 830 (1988) (citing *Rodriguez v. United States*, 480 U.S. 522, 524, 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987)); *Broughton Lumber Co. v. Yeutter*, 939 F.2d 1547, 1557 (Fed. Cir.1991). Only if there is a *clear repugnancy* between the earlier and later statutes or the later statute covers the whole subject of the earlier one and is clearly intended as a substitute, may a repeal by implication be found. *See Fausto*, 484 U.S. at 452, 108 S.Ct. at 676; *Randall v. Loftsgaarden*, 478 U.S. 647, 661, 106 S.Ct. 3143, 3151, 92 L.Ed.2d 525 (1986); *Georgia v. Pennsylvania R.R.*, 324 U.S. 439, 456–57, 65 S.Ct. 716, 725–26, 89 L.Ed. 1051 (1945); *Wood v. United States*, 41 (16 Pet.) U.S. 342, 362–63, 10 L.Ed. 987 (1842); *Carter v. Gibbs*, 883 F.2d 1563 (Fed.Cir.1989).

The court finds no clear repugnancy between 28 U.S.C. § 1491(a)(1), an express limitation of this court's remedial authority to the award of money damages, and § 1491(a)(2), 41 U.S.C. § 605(a), or § 609(a)(1) such as to imply repeal of § 1491(a)(1). This reading of these provisions does not create absurd, unreasonable, or unworkable results. *Cf. Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 454, 109 S.Ct. 2558, 2566, 105 L.Ed.2d 377 (1989). Nor did the CDA or § 1491(a)(2) cover the whole subject of the Tucker Act, such that implied repeal by substitution would be appropriate.

Even if the provisions of the CDA created an ambiguity in § 1491(a)(2) (and thus recourse to its legislative history were permitted), the legislative history of the CDA does not provide any express support for the notion that Congress intended government claims to be brought to this court by a contractor, and it clearly *rejects* any notion that these statutes were intended to bestow declaratory judgment authority upon this court.

(8) Section 1491(a)(1), the last sentence of § 1491(a)(2), *and* the CDA reasonably can be read together, as providing that a contract claim subject to the CDA cannot be heard in this court unless it is *both* a cognizable claim under the Tucker Act *and* brought by a contractor who has met the exhaustion and other procedural requirements of the CDA. Thus, the CDA substantially restricted this court's jurisdiction over the category of contract cases to which the CDA applies, because *in addition to* meeting this court's Tucker Act jurisdictional limitations, a plaintiff with such a claim must *also* clear the jurisdictional hurdles of the CDA, such as certification.[8]

(9) While *dicta* therein may suggest otherwise, the decisions in the authorities cited by the parties in support of jurisdiction over this claim—*Overall Roofing*, 929 F.2d at 689, and *Placeway Constr. Corp. v. United States*, 920 F.2d 903 (Fed.Cir. 1990)—dealt with default terminations, did *not* involve "government claims" for money damages, and thus do *not* directly hold that a contractor may bring suit on a "naked" government claim for money damages in the Claims Court. Rather, they hold only that the Claims Court does not have jurisdiction over a "naked" *contractor* claim, *i.e.*, one not associated with any claim for money damages.

Thus, the court in *Overall Roofing* expressly distinguished the holding in *Ma-*

---

**8.** This reading, preserving previous Tucker Act limitations on jurisdiction, is consistent with Congress' expressed intent on other occasions when the Tucker Act was specifically expanded. For example, in enacting the 1972 amendments enlarging the court's remedial authority in employee pay cases, the legislative history warned:

[This change] is not intended to alter the scope of review ... [or] ... extend the classes of cases over which the Court of Claims has jurisdiction, and it is not intended to confer jurisdiction over any type of case not now included within its jurisdiction. When the Court of Claims does have jurisdiction over any case before it, this bill will enable the court to grant all necessary relief in one action.

118 Cong.Rec. 15,010 (May 1, 1972).

*lone v. United States*, 849 F.2d 1441, 1441 (Fed.Cir.1988) (that a government claim for money damages *may* support jurisdiction under the CDA) on the grounds that *Malone* involved a *board of contract appeals'* jurisdiction, under 41 U.S.C. § 607(d), rather than Claims Court jurisdiction under § 609(a)(1) and that boards "historically addressed challenges to default termination." *See Overall Roofing*, 929 F.2d at 688–90; *see also Scott Aviation v. United States*, 953 F.2d 1377 (Fed.Cir.1992) (affirming dismissal of government claim).

To the extent that prior cases involving default terminations and no claim for money due and owing the contractor did *not* expressly decide whether the "fig leaf" of a "government claim" for money damages would conceal a "naked" non-monetary claim by the contractor for declaratory judgment, *Overall Roofing*, 929 F.2d at 687, their decisions are not binding on this jurisdictional question. *See Huston*, 956 F.2d at 261 ("Even as to our own judicial power or jurisdiction, this court has followed the lead of Mr. Chief Justice Marshall who held that this court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub silentio*." (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952))).

Nor do principles of *stare decisis* necessarily bind this court, in its current incarnation as an Article I court, to jurisdictional decisions of the Court of Claims or the Federal Circuit to the extent those courts' exercise of jurisdiction was based solely upon "inherent" or equitable powers arising from their Article III status. *But see Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. ——, ——, 111 S.Ct. 2773, 2783, 115 L.Ed.2d 321 (1991) (Scalia, J., concurring in part and concurring in the judgment) ("Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.") (citations omitted).

(10) It goes without saying that the government cannot initiate suit in this court. 28 U.S.C. § 1491(a)(1). It cannot even maintain a counterclaim if the court does not have subject matter jurisdiction over plaintiff's complaint. *Somali Dev. Bank v. United States*, 508 F.2d 817, 822, 205 Ct.Cl. 741 (1974); *Mulholland v. United States*, 361 F.2d 237, 245, 175 Ct.Cl. 832 (1966).

(11) The notion that the CDA may have expanded this court's jurisdiction to encompass a naked "government claim" (*i.e.*, a challenge to a contracting officer's decision upholding a government demand for damages that has been filed in this court by the plaintiff and that is unaccompanied by any claim for actual money damages presently due and owing to the plaintiff) essentially is pinned on a solitary sentence, the second sentence in § 605(a). Section 605(a) is a subsection that, as its caption indicates, governs "Contractor claims." (It is noteworthy that the CDA contains, however, no parallel provision dealing with procedures for asserting, deciding, or appealing "Government claims.")

Section 605(a) provides (emphasis added):

All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. *All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer.* The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter. Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding.

Nothing elsewhere in the CDA, or in its legislative history, supports the contention that "government claim" was intended to refer to claims *other* than those related to or arising out of the same contract as the contractor's claims, *i.e.*, related set-offs or counterclaims, or to expand the Claims Court's jurisdiction to encompass challenges to all government demands for pay-

ment that are cast in the form of contracting officer final decisions, regardless of whether the underlying (government) claim was in dispute.

On the contrary, § 609(a)(1) strongly suggests that *"the* claim" on which a "contractor may bring an action directly ... in the United States Claim Court" is the *contractor's* claim. This reading is supported by § 609(a)(3), which establishes the statute of limitations as "twelve months from the date of the *receipt by the contractor* of the decision of the contracting officer *concerning the claim.*"

Because a contracting officer's final decision requiring only payment by the contractor to the government generally is not actually based on an isolated, "submitted" government claim (in fact, the final decision itself generally is referred to as the "government claim" in cases such as *Malone*), it would have made no sense to include the phrase "concerning the claim" unless one reads it as a limitation on *which* contracting officer's decisions may start the statute—that is, to limit the triggering decisions to those based on a *contractor's* claim for damages. If the intention had been to allow challenges to *any* contracting officer decision, § 609(a)(3) could have so provided, by commencing the 12–month statutory period with the *"issuance* of *any* decision of a contracting officer" or of "any decision of a contracting officer concerning *a* contract."

Interpreting "claims" to include "government claims" whenever that term is used in the CDA would create absurd or unworkable results. Under such a reading, the requirements of § 605 would bar this court's consideration of any *government* claim that was not certified—and the certification requirement in § 605(c) would be read out of the statute whenever the government issued a final decision *in advance* of the contractor's filing a claim, even if the *contractor's* separate claim was for more than $50,000.[9] This reading might reward delay in the submission of

contractor claims, a result Congress clearly did not intend in enacting the CDA. Finally, if such a significant class of new claims were being added by § 605(a)(1), it is difficult to explain why the Senate report on the CDA never even mentions "government claims," either in the "section by section" analysis or, for that matter, anywhere else.

(12) Nor can either the qualifiers in § 605(a)(1)—that a claim "may be brought by a contractor in this court notwithstanding any contract provision, regulation or rule of law to the contrary"—or the 1978 amendment to § 1491(a)(2) of the Tucker Act permitting the court to render judgment in cases arising under the CDA, be read to revoke § 1491(a)(1) of the Tucker Act.

First, as discussed above, § 1491(a)(1) of the Tucker Act is not mentioned in either provision, and thus the intent to revoke it is not express. Second, there is no indication that the term "rule of law" is intended to refer to statutes, rather than, as more commonly used, to case law. The more likely explanation for the inclusion of this phrase is to clarify that the distinction, under former law (*e.g.*, the Wunderlich Act), between claims "arising under" and those "for breach of" a contract (the former limited to the Boards, the latter restricted to the Court of Claims) was to be abolished and "all disputes" were to be cognizable in the Boards as well as in the Claims Court regardless of *that* dichotomy. Third, as already noted, the legislative histories of § 609(a)(1) and § 1491(a)(2) provide no support for such an argument.

(13) One consequence of concluding that the court has no jurisdiction to render declaratory judgments in the form of a decision on a "government claim" may require contractors (and the Government) to comply with the requirements of 48 C.F.R. § 32.6, *i.e.*, to collect sums demanded by the government, even if there is a dispute or appeal by the contractor, unless the contractor is granted a deferment, see § 32.- 613, based on presentation of a "good and

---

**9.** Reading "claim" uniformly to include "government claim" would also result in nonsensical applications of § 608 (small claims) and § 611

(contractors could get interest dating from receipt by the contracting officer of the *government's* claim).

sufficient bond or other [acceptable] collateral," see § 32.613(1). If the contractor either pays the amounts demanded by the government *or* posts a bond, prior to bringing an action in this court, its claim here *would* be for money damages presently due and owing, as required by the Tucker Act. *Cf. Scott Aviation*, 953 F.2d at 1378 ("A claim within the Claims Court's jurisdiction ... must seek money damages ... [that] must be presently due".) (citing *Overall Roofing*, 929 F.2d at 689 (Fed.Cir. 1991)).