**CERVETTO BUILDING MAINTENANCE CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 215–81C.**

United States Claims Court.

April 15, 1983.

Timothy H. Power, San Francisco, Cal., for plaintiff.

Michael D. Morin, U.S. Dept. of Justice, Washington, D.C., with whom were Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., and Edward Rubinstein, Dept. of the Army, Office of Judge Advocate, San Francisco, Cal., of counsel, for defendant.

## OPINION

KOZINSKI, Chief Judge.

## FACTS

Plaintiff challenges termination of its contract to provide janitorial services at the Presidio and several neighboring military bases at San Francisco, California.

The contract called for plaintiff to clean approximately 100 buildings, some at night and some during the day. Its performance was monitored by one night and two day inspectors. If an inspector determined that cleaning was done in an unsatisfactory fashion or not at all, he completed a deficiency report. A copy of this report was presented to the contractor's project manager at the beginning of the next cleaning day. Where performance was deficient, plaintiff was required to correct the problem. However, where the report documented a complete failure to clean a building, no correction was generally required and the government took a deduction from the contract price instead.

Performance problems developed from the start and continued throughout the life of the contract. During the approximately three months that the contract was in force, plaintiff collected no fewer than 473 deficiency reports and suffered $1,339.91 in deductions. By contrast, plaintiff's successor incurred $63.00 in deductions over six months of performance.

On March 14, 1980, the contracting officer notified plaintiff that performance was deficient because it had failed to provide a list of the manufacturers and brand names of materials it was using. The notice gave plaintiff 10 days to cure by providing the information. Plaintiff complied on March 21, 1980.

Before plaintiff's response had been received, however, defendant sent a second 10-day cure notice setting forth a series of additional deficiencies consisting of failures to: provide adequate staffing; provide adequate equipment and keep it in working order; provide an adequate inspection system; and correct inspection deficiencies. The notice was mailed March 19, 1980, and was received by plaintiff on March 24, 1980.

By letter dated April 2, plaintiff wrote defendant and informed it of the various

steps it had taken to correct the deficiencies. The last day of the cure period was April 3, 1980. Defendant concedes, however, that by no later than the morning of April 3, it had decided to terminate the contract. That same day, the contracting officer signed the termination notice and solicited several reprocurement bids. On April 4, plaintiff's representative was handed the notice of termination for default.

Trial was held in San Francisco on November 12–17, 1982. Much of the evidence concerned whether the government had imposed an unreasonably harsh standard in inspecting the contractor's performance and whether that performance had been so deficient as to warrant default termination. The court found that the government had not imposed an unreasonable standard but had applied the same standard as on other contractors who had performed janitorial services at the Presidio. The court also found that plaintiff's performance had warranted default termination. *Cf. Pride Unlimited, Inc.*, ASBCA, 75–2 BCA (CCH) ¶ 11,436. Detailed findings on these points can be found in the transcript immediately following the trial and merit no further elaboration.

The case also presented two legal issues. First, plaintiff argued that in sustaining the termination for default, the government was precluded from relying upon any deficiencies which had been corrected or which had occasioned a deduction from the contract price. Second, plaintiff argued that the termination was defective because the decision to terminate was reached prior to the expiration of its 10-day cure period and it was therefore deprived of a full and fair opportunity to cure. Defendant disputes both points.

## DISCUSSION

### A. *The Election of Remedies Issue*

■ Plaintiff's argument that the government is precluded from relying upon most of the 473 reports documenting its deficient performance is simple and elegant. In plaintiff's view, the government may exact only one penalty for a deficiency, be it a reduction in the contract price, a correction of the deficiency or, under certain circumstances, a termination of the contract. If a deduction is taken, the argument goes, the government has elected its remedy and may ask no more. By the same token, if defendant requires correction, the deficiency is cured and, plaintiff asserts, defendant is precluded from relying upon the deficiency to sustain a termination of the contract. Since virtually all of the deficiency reports presented at trial had been followed by deductions or corrections, plaintiff argues that they should not have been admitted to support the default termination.

Despite its elegance, plaintiff's argument must be rejected as leading to an absurd result. The contract plainly contemplates that minor deficiencies in performance will be addressed through remedies short of termination for default. Equally plainly, it was intended that minor deficiencies be the exception and that performance be satisfactory on most days. When deficiencies become the rule, as they did in this case, necessitating corrections or deductions virtually every day, overall performance under the contract can be deemed unsatisfactory even though individual problems are resolved. *See Pride Unlimited,* 75–2 BCA at 54,500. In such a case, the repeated need for correction may itself serve as the default, making termination an appropriate remedy.

The language of the contract fully supports this interpretation. Part II, § J, ¶ 21(b) provides that the contractor will correct all deficiencies as set forth in the deficiency reports. The paragraph provides further that "[r]epeated ... deficiencies will be cause for reduction in payment ... or default action." This clause contemplates that correction of deficiencies is the preferred remedy where problems are few but that more serious remedies, including default termination, may be invoked for chronic shortcomings.

Any other construction would place defendant in an extremely awkward position and make it unreasonably difficult to termi-

nate the contract for inadequate performance. Under plaintiff's analysis, defendant would be precluded from requiring the contractor to correct deficiencies if it wished to rely upon them as a basis for termination. This would result in unjustified hardship upon those who would have to suffer the inadequate janitorial services. Moreover, defendant could never rely upon more than one month's deficiencies because at the end of the month defendant would be required either to take a deduction for them or to make payment. According to plaintiff, either choice would thereafter preclude defendant from using those deficiencies to justify an adverse action, either because defendant had elected another remedy, deduction, or had waived the deficiency by paying for the performance and thereby accepting it. The court rejects this strained interpretation which could force defendant to prematurely default contracts which might be salvagable with the passage of more time.

Plaintiff relies in its argument on a case from the ASBCA, *W.M. Grace, Inc.,* 80–1 BCA (CCH) ¶ 14,255. While *Grace* is not totally clear on this point, the opinion can be read as supporting plaintiff's position that the government is precluded from relying upon defaults which had been the subject of prior deductions. It is uncertain whether *Grace* construed the same contract as here in issue since the opinion does not cite paragraph 21(b) discussed above. That paragraph expressly makes defendant's remedies cumulative. In any event, to the extent that *Grace* supports plaintiff's interpretation, the court is unpersuaded and declines to follow it.

### B. *The Cure Period Issue*

■ Plaintiff's second argument raises a much closer question. Plaintiff contends that the government has deprived it of one of its remedies under the contract by making the decision to terminate before its 10-day cure period expired. Since the contract specifically guarantees a full 10 days to cure after receipt of a notice of deficiency, plaintiff argues that the early decision to terminate was fatal to the default termination. In support, it points to cases which hold that default terminations are to be strictly construed[1] and that terminations which take place before the expiration of a cure period cannot be upheld.[2]

Defendant responds that a decision to terminate is different from an actual termination. It argues that it is perfectly permissible for a contracting officer to monitor performance during a cure period and to assess the likelihood of termination on the basis of partial performance. It argues further that the contracting officer may make a tentative—yet revokable—internal decision to terminate and, if necessary, to begin lining up reprocurement bidders. Defendant points with alarm to the prospect of defaulted contractors probing the mental processes of contracting officers to determine precisely when they made a termination decision.[3] It argues vigorously that the court should evaluate allegations of premature termination by reference to when the contractor received the notice of termination—a date which it views as objectively verifiable.

The court finds neither position wholly persuasive. The relevant question is not the timing of the decision to terminate but whether, in making that decision, the de-

---

1. *Kisco Co. v. United States,* 221 Ct.Cl. 806, 820, 610 F.2d 742 (1979); *H.N. Bailey & Associates v. United States,* 196 Ct.Cl. 156, 163, 449 F.2d 387 (1971); *DeVito v. United States,* 188 Ct.Cl. 979, 990, 413 F.2d 1147 (1969).

2. *Harvey L. Monk,* PSBCA, 82–2 BCA (CCH) ¶ 15,797; *Introl Corp.,* DOTCAB, 80–1 BCA (CCH) ¶ 14,380; *B & C Janitorial Services,* ASBCA, 66–1 BCA (CCH) ¶ 5355; *Bill Powell, d/b/a Bill's Janitor Service,* ASBCA, 65–2 BCA (CCH) ¶ 4916. *See also Bailey Specialized*

*Buildings, Inc. v. United States,* 186 Ct.Cl. 71, 85–86, 404 F.2d 355 (1968).

3. The court notes, however, that contract cases by their very nature may call for inquiry into the mental state of various persons. *See, e.g., Fairfield Scientific Corp. v. United States,* 222 Ct.Cl. 167, 181–82, 611 F.2d 854 (1979); *Schlesinger v. United States,* 182 Ct.Cl. 571, 581–82, 390 F.2d 702 (1968); *Lee Maintenance Co.,* PSBCA, 79–2 BCA (CCH) ¶ 14,067; *Murcole, Inc.,* ASBCA, 73–2 BCA (CCH) ¶ 10,310.

fendant considered all of the contractor's efforts to comply with the cure notice. Thus, it is entirely permissible for the government to make a tentative decision to terminate the contract before the expiration of the cure period, so long as the decision is subject to reconsideration if there are subsequent, timely, cure efforts. Similarly, there is no harm if a final decision to terminate is made before the expiration of the cure period if the contractor makes no further efforts to cure. However, when an irrevocable decision to terminate is made before the end of the cure period, and a contractor's timely efforts to cure are ignored, the termination is improper.

In this case, the court concludes that the contracting officer's final decision to terminate the contract was premature. While the government concedes that the decision occurred no later than the morning of April 3, the court finds that the decision was in fact made on April 2, after an inspection tour. On the basis of the entire record, the court also finds that at the time the contracting officer reached this decision, he incorrectly believed that the cure period had expired and that he had no further responsibility to consider plaintiff's cure efforts. The finality of the decision was evidenced by the contracting officer's signing of the termination notice promptly the next day.

By making the final decision to terminate the contract on April 2, the contracting officer ignored one and quite possibly two items in the contractor's efforts to cure. First, the contracting officer did not consider the contractor's performance of janitorial services on April 3, the last day of the cure period, or on the night preceding it. While one day's and one night's performance might appear insignificant, they are a substantial part of a cure period which lasts only 10 days.

Second, there is significant doubt whether the contracting officer considered the April 2 letter setting forth actions the contractor had taken to shore up overall performance.[4] This April 2 letter is far from insignificant. In response to a complaint about staffing, the letter informed the government that the contractor had increased the number and experience of its personnel. In response to criticisms about the adequacy of inspections and correction of deficiencies, the letter noted the hiring of a new day supervisor and the restructuring of work schedules to increase inspection time. Finally, in response to objections as to the adequacy and condition of cleaning equipment, the contractor represented that it had bought six new vacuum cleaners.

The failure of the government to consider the contractor's performance during the last part of the cure period and the contents of the April 2 letter constitutes an abuse of discretion. The contract gives the contractor a full 10 days to try to cure and the contracting officer has the responsibility to consider all steps taken during that period. The court doubts whether the contracting officer would have reached a different decision had he waited until the morning of April 4 to decide.[5] However, it is not for the court to determine what the contracting officer might have done had he been fully informed. It is not unusual for a contracting officer to give a contractor another chance when performance is improving. See, e.g., Murcole, Inc., 73–2 BCA (CCH) ¶ 10,310 (contractor able to procure a third opportunity to improve its janitorial services, despite inadequate performance during two immediately preceding cure periods, by showing sincere desire to cure and some improved performance). The contractor was entitled to a fully informed decision by the contracting officer.

4. The evidence is unclear as to whether plaintiff's April 2 letter in fact arrived before the close of business on April 3. However, since there is no evidence that it did not arrive or could not have arrived on that date, and since it is reasonable to assume that the contractor would have taken steps to assure its arrival

within the 10-day period, the court gives the contractor the benefit of the doubt.

5. On this record, the contracting officer would have been well within the scope of his discretion had he decided to terminate the contract at that point.

## CONCLUSION

Under the circumstances, the decision to terminate based on an incomplete assessment of plaintiff's efforts to cure was an abuse of discretion. The default termination is therefore converted to a termination for the convenience of the government. Since the parties have agreed to stipulate the amount of damages once the court determines liability, they are directed to file a stipulation as to damages within 30 days. The clerk shall enter judgment for plaintiff in the amount stipulated plus costs.