**The BOEING COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 92–14C.**

United States Claims Court.

June 3, 1992.

James J. Gallagher, Los Angeles, Cal., for plaintiff.

Martha H. DeGraff, with whom were Asst. Atty. Gen. Stuart M. Gerson and David M. Cohen, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This action, brought pursuant to the Contract Disputes Act ("CDA"),[1] is before the court on the government's motion to dismiss for lack of jurisdiction. The substance of the motion is that there was no actual or deemed final decision by the contracting officer on a claim by Boeing, nor was there at any time a government claim that could be appealed. After oral argument, and for the reasons set forth below, the court concludes that the motion should be granted.

*Factual Background*

On February 25, 1985, Boeing was awarded Contract F19628–85–C–0046, the Prime Mission Equipment Contract ("PME Contract"). Under this contract, Boeing was to design, develop, produce and install the principal equipment required for the Peace Shield Program to be installed in Saudi Arabia. The contract was estimated to be worth $847,662,384. The contract initially provided for completion by Boeing within seventy-one months of the award of the contract. It is undisputed that the contract was modified numerous times. On October 27, 1989, the government ceased making payments to Boeing. On November 30, 1989, the government issued a Cure Notice to which Boeing responded on December 22, 1989, and January 4, 1990. On October 1, 1990, citing continued lack of progress by Boeing, the government issued a Notice to Show Cause why the contract should not be terminated for lack of per-

---

1. 41 U.S.C. §§ 601–613 (1988).

formance. On December 7, 1990, the government informed Boeing that the contract was being referred to a Termination Contracting Officer[2] for investigation.

On January 10, 1991, the government partially terminated the PME contract for default, and four days later on January 14, 1991, all payments to Boeing ceased. On January 25, 1991, the contracting officer sent Boeing a letter demanding the return of $605,424,954.50 in unliquidated progress payments. Although the letter was written as a demand, the final paragraph read, "If you have not presented any information concerning this demand or we have not received payment within 30 days from the date of this notice, I will assume you have no comments or do not intend to make payment. Accordingly, I will consider issuing a Final Decision on the above Demand for Payment."

On February 22, 1991, Boeing requested a deferment of repayment of the unliquidated progress payments on the grounds, *inter alia*, that it disputed the government's right to recover the money, that overcollection would be likely, and that given the large amount of money at issue, it was not practicable for Boeing to make immediate payment. The parties do not reference a response to this request.

The circumstances recited above were the subject of an earlier-filed complaint, Docket No. 91–1077. Initiated on April 11, 1991, that action was filed pursuant to RUSCC 27 as a "preliminary complaint." This rule affords a plaintiff the right to file a complaint on limited information and belief, and to amend the complaint after certain preliminary discovery. The complaint was dismissed for lack of jurisdiction on March 10, 1992. *Boeing Co. v. United States*, 25 Cl.Ct. 441 (1992). Judge Robinson held that the court had no jurisdiction over the contractor's affirmative demands for relief since they had never been the subject of a certified administrative claim. He also held that the government's letter of January 25 was conditional, and thus not

a final demand for repayment. It therefore could not be the basis for an action to challenge a government claim.

The administrative claims that are the subject of the pending complaint were submitted to the contracting officer during the pendency of 91–1077. On November 6, 1991, Boeing submitted a claim for "delay-disruption" of its performance on the PME contract. The claim was certified. In it Boeing asserted that it could not complete system integration testing of the Prime Mission Equipment within the originally specified thirty-nine months because of delay on the part of the Air Force managers, Air Force Support Contractors and other contractors not directly affiliated with PME contract. Boeing stated that its performance was delayed due to mismanagement and inaction by these other actors.

The delay-disruption claim also alleged that the contract specifications were changed numerous times by the Electronic Systems Division ("ESD") and that ESD did not follow the well-defined and documented change process for making modifications. This failure allegedly interfered with Boeing's ability to perform on the contract. Specifically, ESD required Boeing to explain in "unnecessary" levels of detail, any changes which affected certain kinds of specifications. This meant that Boeing had to spend time composing an additional report, rather than devoting its resources to performing the contract. Furthermore, the government failed to disclose superior knowledge of site accessibility and other matters. The delay-disruption claim was submitted in the alternative as either a modified-total cost claim or a cost-reimbursement claim.

On November 7, 1991, Boeing submitted a Termination for Convenience ("TFC") Settlement claim under the PME contract. This claim was also certified. The claim referred to the termination for default issued by the government on this contract on January 10, 1991. Boeing claimed it was entitled to have the termination for default

---

**2.** There were two contracting officer positions during the relevant period, that of Performance Contracting Officer, and that of Termination Contracting Officer. The court will refer to them generically as "contracting officer."

treated as a termination for the government's convenience and to be paid termination settlement costs as of January 10, 1991. The claim was submitted on a total-cost basis, using actual costs plus an estimate of costs that would have been incurred in completion of the contract.

One of the government's arguments with respect to the present motion is that the contracting officer had no authority to consider those claims due to their being virtually identical to the complaint in 91–1077. The best argument the government can offer was provided by Boeing itself in its Notice of Related Case filed with the complaint in the instant action. The Notice recites that "this case (a) arises from the same transactions, happenings and events, and (b) contains the same issues, as [case 91–1077C]." The court's own examination of the two complaints bears out this assessment. The pending complaint contains fifteen counts whereas 91–1077C contains only eight. However, all eight counts of the earlier complaint are repeated, almost verbatim, in the later complaint, with other counts added. Moreover, the additional counts do not rely on unique circumstances, nor do they raise substantially different legal issues from the first, preliminary complaint.

For example, Count I of the 91–1077C complaint is titled "Excusable Delay/Conversion to Termination for Convenience." At paragraphs 74–82, the previous complaint describes in thirty pages of detail the alleged delay in Boeing's performance caused by the government's inaction, interference and disruptive actions. The disruptive actions included constant changing of the specifications and mismanagement of the support contractors resulting in contradictory comments and recommendations. The government allegedly required excessive documentation of specifications changes and the government failed to cooperate with Boeing. Virtually identical language is found at paragraphs 80–88 in the 92–14C complaint. The only difference is that the later complaint in 92–14C has been updated to reflect changes in the state of completed work.

The legal character of the two complaints is virtually identical, and so is the relief sought. This is made clear by the following side-by-side comparison of excerpts from the two complaints, using as a referent the prayer for relief sought. The lettered paragraphs are from the prayers for relief. The numbered paragraphs are taken from the body of 91–1077.

---

**91–1077**

(a) That this Court enter a judgment holding the PME Contract to have been void *ab initio*, or, in the alternative, voidable;

(b) That this Court enter a judgment holding that Boeing performed under an implied-in-fact cost-reimbursement plus fixed-fee type contract;

(c) That this Court enter a judgment reforming the PME Contract to a cost-reimbursement plus fixed fee contract;

[98.] ... the Government breached the PME Contract by suspending all pay-

**92–14**

(c) ... that the Government's failure to adhere to DOD Directive 5000.1 ... rendered the PME Contract *void ab initio*, or in the alternative, voidable....

(c) ... that Boeing performed under an implied-in-fact cost-reimbursement plus fixed-fee contract and is entitled to payment in an amount in excess of the $605,-424,954.50 demanded by the Government as repayment....

(d) ... that the parties were mutually mistaken as to the nature and extent of the development effort required ... thus entitling Boeing to rescind the PME Contract and recover all of its costs of performance, plus profit or, alternatively, reforming the contract to a cost-reimbursement plus fixed fee contract ...

(b) ... that the Government breached the PME Contract by ... its failure to pay

ments. [87.] ... Boeing expended more than $200 million to continue performing ... from the date it last received a progress payment.

[105.] ... the Government did not disclose its superior knowledge

(d) That this Court enter a judgment holding that the Government breached the PME Contract;

(h) That Boeing be awarded damages for breach of contract;

(e) That this Court enter a judgment converting the termination for default to a termination for the convenience of the Government;

(f) That this Court [hold] that ... Boeing is entitled to the amount of $605,424,-954.50 claimed by the Government ...

(g) That Boeing be awarded all of its performance costs, plus a reasonable profit, plus settlement expenses;

[12.] Pursuant to Contract Line Item No. 0051, Boeing was directed to procure three computers which were delivered to Boeing in early March 1990. Subsequent to the termination, Boeing sent ... [an] invoice for reimbursement of the $1.853 million purchase.... This amount is in dispute.

Boeing for work performed ..., its failure to disclose superior knowledge ..., its bad faith termination ..., its fraudulent inducement to cause Boeing to enter into the PME Contract ..., and its breach of the implied covenant of good faith and fair dealing.... As a ... result of these Government breaches, Boeing has suffered damages which include increased cost of performance, lost profits, and other damages ... in excess of the $605,424,-954.50 demanded by the Government ...

(e) ... the Government's demand for the return of unliquidated progress payments is of no force and effect by reason of the termination for default to a termination for the convenience of the Government, and that the Government is not entitled to the amount of $605,424,954.50 ...

(h) ... Boeing is entitled to recover its costs as set forth in its Termination for Convenience Settlement Claim ... in the amount of $644,354,109 ... [*See* Settlement Claim, Def. App. at 151, which sets out claim for performance costs, profit and settlement expenses.]

(f) ... the Government's refusal to pay for the three computer systems ... constituted the assertion of a Government claim that it did not have to pay $1.853 million....

---

*Discussion*

■ Under the CDA, this court may only exercise its jurisdiction where there is a government claim for money[3] or where a contractor has submitted a written claim. In the latter circumstance, the court's juris-

**3.** The Federal Circuit held in *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1562 (Fed. Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1308, 113 L.Ed.2d 243 (1991), that "once the decision of the contracting officer becomes final on a government claim against the contractor, the merits of that decision cannot be judicially challenged. To prevent that preclusive effect, the contractor has two options under ... the CDA. The contractor may ... file a direct access suit in the United States Claims Court...." The decision points to the language of the CDA. 41 U.S.C. § 609(a)(1), (3). Section 6 of the act deals comprehensively with claims, including "[a]ll claims by the government against a contractor," the latter also having to be the subject of a "decision of the contracting officer." 41

U.S.C. § 605(a). The Claims Court's organic jurisdictional statute was amended in 1978, as part of the adoption of the CDA, to give the court "jurisdiction to render judgment upon any claim by *or against*, or dispute with, a contractor arising under [41 U.S.C. § 605(a)(1)]." Pub.L. No. 95–563, 92 Stat. 2391 (codified at 28 U.S.C. § 1491(a)(2) (1988)) (emphasis supplied). Other decisions have consistently been to the same effect as *Seaboard*. *See HNV Cent. River Front Corp. v. United States*, 25 Cl.Ct. 606, 609 (1992); *Case, Inc. v. United States*, 25 Cl.Ct. 379, 381 n. 3 (1992); *Sharman Co. v. United States*, 24 Cl.Ct. 763, 766 n. 1 (1991); *Cupey Bajo Nursing Home, Inc. v. United States*, 23 Cl.Ct. 406, 417 (1991); *SGW, Inc. v. United States*, 20 Cl.Ct.

diction depends on either a final decision of the contracting officer or a deemed final decision pursuant to 41 U.S.C. § 605(c)(5). In this case, Boeing challenges both what it asserts is a final decision by the contracting officer on a government claim (the demand for repayment of progress payments), and what it says were deemed denials of the two contractor claims.

The government initially urges dismissal of those elements of the complaint that challenge the legitimacy of the January 25 letter as a government claim for return of progress payments.[4] It argues that the letter is not a final demand by the government and therefore cannot constitute a claim under the CDA. This issue was squarely and necessarily addressed by Judge Robinson in the prior litigation. *Boeing*, 25 Cl.Ct. at 448. Plaintiff's only argument for readdressing that issue here is that it was wrongly decided. As to the present action between these parties, the court does not have the option to reexamine the issue. "[A] party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided again." *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983).

It follows from this that the only question is whether the contractor's own claims are properly before the court. Because there was no final decision by the contracting officer on Boeing's claims, the plaintiff relies on the "deemed denial" language of the CDA. Section 6 of the act permits a suit here on the sixty-first day after submission of a claim to the contracting offi-

cer, 41 U.S.C. § 605(c)(5), unless the contracting officer has "notif[ied] the contractor of a time within which a decision will be issued." 41 U.S.C. § 605(c)(2)(B). Because there was no such notification, and because the suit was indeed commenced on the sixty-first day after the second claim was submitted, the plaintiff argues that jurisdiction attaches.

The Court of Claims held concerning the "deemed denial" provision that, for the waiting period to begin running, the contracting officer had to be obligated to deal with the claim. *White Plains Iron Works, Inc. v. United States*, 229 Ct.Cl. 626, 629–30 (1981). In that case, the court found that the pendency of a suit on the same claim had the effect of preventing the contracting officer from acting. "Under these circumstances we deem the 60–day period to commence upon our dismissal of the suit as untimely and its remand to the contracting officer." *White Plains*, 229 Ct.Cl. at 630.

The court in *White Plains* does not reference support for the proposition that the pendency of litigation prevents the running of the contracting officer's period of consideration. The government finds support in 28 U.S.C. § 516 (1988). This section states that, "Except as otherwise provided by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General." In *Hughes Aircraft Co. v. United States*, 209 Ct.Cl. 446, 534 F.2d 889 (1976), the Court of Claims held that authority to be exclusive and plenary. The court also held,

174, 177 (1990); *Engle Investors v. United States*, 21 Cl.Ct. 543, 544 n. 1 (1989); *Cecile Indus., Inc. v. United States*, 18 Cl.Ct. 730, 732 (1989); *Russell Corp. v. United States*, 15 Cl.Ct. 760, 762 (1988); *Mega Constr. Co. v. United States*, 14 Cl.Ct. 555, 557–58 (1988); *Ralcon, Inc. v. United States*, 13 Cl.Ct. 294, 297 (1987); *Haynes Constr. Sys., Inc. v. United States*, 10 Cl.Ct. 526, 529 (1986); *Elgin Builders, Inc. v. United States*, 10 Cl.Ct. 40, 44 (1986); *D. Moody & Co. v. United States*, 5 Cl.Ct. 70, 79 (1984). *But see Corporate Air v. United States*, 26 Cl.Ct. 204 (1992) (order to show cause why court has jurisdiction over government claims). To the extent that a decla-

ration of rights is implicit in such a judgment, Congress intended the court to exercise such jurisdiction.

4. This element of the motion would appear to be a moot point if the termination for convenience claim by the contractor survived. To grant relief under that claim, the court would of necessity have to conclude that the default termination—the premise underlying the demand for return of progress payments—was erroneous.

however, that to oust an administering agency of authority to deal with a contract matter, the "claims or matters" must be related. In that case, § 516 was not a bar because the disputes involved two different components of work on the same overall project.

Additional support for the government's argument could also be found in cases construing Executive Order No. 6166 (June 10, 1933), which provides at section 5 in part as follows:

> As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise ... now exercised by any agency or officer, is transferred to the Department of Justice.

In *Construction Service Co. v. United States*, 174 Ct.Cl. 756, 357 F.2d 973 (1966), the Court of Claims was confronted with the contention of the government that a compromise worked out between the agency and plaintiff during the pendency of litigation was unenforceable because of this Executive Order. The court, in rejecting the contention on the facts, did not quarrel with the underlying argument. The court distinguished the claim that had been settled from the suit being administered by the Department of Justice:

> The suit which plaintiff commenced in 1959 related only to plaintiff's spillway-bucket claim. Plaintiff did not include its training-wall claim, since that matter was still pending in administrative channels. It follows, therefore, that the dispute regarding the training walls was not part of the 'case referred to the Department of Justice' in 1959.

*Construction Service*, 174 Ct.Cl. at 764, 357 F.2d at 977. Executive Order 6166 was applied to different effect in *United States v. Newport News Shipbuilding & Dry Dock Co.*, 571 F.2d 1283, 1287 (4th Cir.), *cert. denied*, 439 U.S. 875, 99 S.Ct. 212, 58 L.Ed.2d 189 (1978), where the court held that the Department of Justice had authority to reject a compromise worked out at the agency level concerning a matter already in litigation.

■ It has to be emphasized that, because there was no final contracting officer decision, the sole issue is whether there has been a deemed denial. It is unnecessary, therefore, to decide whether the contracting officer could have denied the claims for purposes of the CDA. For this reason, it follows from the decisions discussed above that, if the subject of this action, then pending before the contracting officer in the form of two administrative claims, is "related" to the subject of 91–1077, the sixty day period was, at a minimum, tolled, and the court would not have jurisdiction.

The decision in *Hughes Aircraft* did not explain what was meant by the term "related." It plainly cannot mean merely related in the sense that the complaint and the administrative claims arise out of the same contract. The practical problems with enforcing § 516 in that circumstance are obvious. The contracting officer could claim a lack of ability to deal with disputes arising out of completely separate work under the contract. The CDA contemplates that an administrative claim can be submitted on one item of work—which can lead to an appeal—while other work progresses and in turn generates a valid claim for the contracting officer's consideration. This system would be interrupted if the threshold for determining relatedness was that the two claims arise out of the same contract, or even necessarily out of the same portion of contract work. The present case provides a graphic instance in which the contracting officer cleaved the contract into two distinct subject matters—those items of work terminated and those not terminated. In the broadest sense both portions of work are related, and indeed claims potentially arising out of the non-terminated work may share a common source with the subject of this litigation. That should not inevitably preclude the contractor from making claims, or the contracting officer from issuing instructions.

■ In the court's view, the relevant test should be whether the part of the claim that is not subject to litigation can coher-

ently be isolated and dealt with separately as a matter of contract performance. If so, then separate claims could arise out of the same contract, and appeals could proceed without impairing the contracting officer's ability to deal with work not implicated in the litigation. Although not conclusive, or exclusive, the court views the presence of the following factors as a presumptive indication that the administrative process may conflict with litigation: the claims and the complaint arise out of the same circumstances of contract execution or performance; and they require the contracting officer or the court to address the same asserted basis for recovery, expressed in terms of legal issues or remedies. If these factors are present, then the concerns of § 516 are implicated, namely, the need for the Department of Justice to have exclusive control over negotiation, compromise, and litigation strategy.

■ Contrary to Boeing's assertions, this construction of § 516 complements the CDA, rather than conflicts with it. The act is designed so that administrative consideration of a claim will occur prior to litigation. Otherwise, the administrative process and the courts could be at cross purposes. The courts or boards review the results of administrative · decisionmaking that has concluded prior to commencement of the suit.

Here, the issues and facts of case 91–1077 are the same as those in the two certified claims submitted by Boeing in November 1991. To the extent there may be minor differences, the court finds that there is not enough to find a clear division between the claims and the earlier litigation. The relief sought is, for all practical purposes, identical. Boeing's primary contention is that it had not made specific administrative claims for damages arising out of "delay and disruption" or for its settlement costs. To carry the argument

further, it could be said that, in light of Judge Robinson's opinion, the complaint in 91–1077 was a nullity from the outset. It is the court's view, however, that § 516 and Executive Order 6166 are directed at more practical concerns. The plaintiff defines the issues when it files a complaint. Until that complaint is dismissed those issues are the province of the Department of Justice, even if the plaintiff has misfired on its launch from the administrative process. Although Boeing did not submit a claim for its settlement costs as a preliminary to filing 91–1077, the same components of its pending TFC claim were present in the complaint in 91–1077. Boeing asked for conversion to a termination for convenience on the same grounds, and it specifically requested its cost of performance, profit and settlement expenses, just as it did in the TFC claim underlying the present suit.

Plaintiff's suggestion that the contracting officer has full authority to deal with termination for convenience claims at the same time the Department of Justice is arguing the merits of the underlying termination for default is completely untenable. It was only the serendipity of the fact that the contracting officer's demand letter was held not final that precluded a treatment of the merits of the default in 91–1077. How could the contracting officer be authorized to resolve disputes of fact and ultimately decide the propriety of the default in connection with a termination for convenience claim when at the same time the court is addressing identical issues related to a government claim for return of monies posited on the same default?

As to delay and disruption, the preliminary complaint is interspersed throughout with assertions of government-caused delay and disruption.[5] Presumably these assertions were to lead to findings and related conclusions by the court. It would be impossible for the court and the contract-

---

5. Paragraph 39 is typical:
    Although P00044 adjusted the delivery schedule, it did not address the basic causes of the delays encountered by Boeing, nor did it address compensation for those delay and disruption factors. Many of those delay and disruption factors, as well as delay factors

that were addressed in P00044, were not remedied and continued after the execution of P00044 and caused additional delays and disruptions which eventually caused MAC 67 also to become both unattainable and unenforceable.

ing officer to simultaneously address and perhaps resolve Boeing's assertions as to the causes of delay and disruption without a high potential for conflict.

There was never a time when the contracting officer had certified claims before her which were not also the subject of a pending Claims Court suit. The sixty day period necessary to create a "deemed denial" has thus not run. *See White Plains,* 229 Ct.Cl. at 630. Without a government claim, a final decision from the contracting officer, or a "deemed denial" of a contractor's certified claim, this court cannot assert jurisdiction. 41 U.S.C. § 605; *Scott Aviation v. United States,* 20 Cl.Ct. 780 (1990).

The government's motion to dismiss is granted. The Clerk is directed to dismiss the complaint without prejudice. No costs.