The **BOEING COMPANY**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 91–1077C.

United States Court of Federal Claims.

April 25, 1994.

Order Denying Reconsideration
May 13, 1994.

James J. Gallagher, Los Angeles, CA, for plaintiff.

Sharon Y. Eubanks, with whom were Asst. Atty. Gen. Frank W. Hunger, David M. Cohen, and Kirk Manhardt, Washington, DC, for defendant.

## OPINION

BRUGGINK, Judge.

This action, brought pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1988) ("CDA"), is before the court on defendant's motions to dismiss counts XV and XVI of plaintiff's complaint. On March 13, 1993, the Federal Circuit reversed an order of this court dismissing two of plaintiff's claims for money and directed this court to allow plaintiff to amend its complaint to include those claims.[1] Defendant once again seeks dismissal of the added counts.

The Federal Circuit found "no procedural or substantive reason to hold up resolution of these ... claims." *Id.* at 6. Accordingly, the complaint has been amended to add the additional counts. Count XV appeals a deemed denial of a claim seeking an adjustment in contract price due to delay and disruption ("delay claim"). Count XVI is a claim for termination for convenience costs ("TFC claim"). Defendant seeks to dismiss Count XV for lack of jurisdiction, and, in a separate motion, to dismiss Count XVI for lack of jurisdiction or, in the alternative, for failure to state a claim.

Defendant urges that the subsequent decision by the Federal Circuit in *Sharman Co. v. United States,* 2 F.3d 1564 (Fed.Cir.1993), is at odds with the prior appellate decision and dictates dismissal of both counts. It argues in the alternative that Boeing's TFC claim in Count XVI is premature, as the

court has not yet adjudicated plaintiff's challenge to the termination for default ("TFD"). For the reasons set forth below, the motions are denied.

## BACKGROUND [2]

On February 25, 1985 the government, acting through the United States Air Force, awarded to Boeing Contract F19628–85–C–0046, the Prime Mission Equipment Contract for the Peace Shield Program. Under this contract, Boeing was to design, develop, produce, and install the principal equipment for the program. The contract's estimated worth was $847,662,384. After disputes arose over contract performance, the government partially terminated the contract for default on January 10, 1991. On January 25, 1991 the Contracting Officer ("CO") demanded the return of $605,242,954.50 in unliquidated progress payments. In a letter dated February 22, 1991, Boeing requested an extension of time in which to return the payments, and disputed the government's right to them.

On April 11, 1991 Boeing commenced this action by filing a complaint (91–1077–C), requesting that the court overturn the default termination and the agency's demand for return of progress payments. The complaint alleged several grounds for relief from the dispute arising from this contract.

Later that year, Boeing submitted two certified claims to the CO. On November 6, 1991 Boeing presented a delay claim, which alleged that mismanagement and inaction by the government and other contractors delayed Boeing's performance of this contract. The next day, Boeing submitted its TFC Settlement claim. This claim asserted that the government should treat the termination for default as a termination for the government's convenience and pay Boeing termination settlement costs as of January 10, 1991.

---

1. *Boeing Co. v. United States,* 991 F.2d 811 (Fed. Cir.1993) (table case), reh'g denied, (June 1, 1993).

2. The court only provides the background necessary to give context to its ruling on the govern-

ment's motion. For greater detail see the earlier opinions of this court and of the Federal Circuit. *Boeing, Co.,* 991 F.2d 811; *Boeing Co. v. United States,* 26 Cl.Ct. 529 (1992); *Boeing Co. v. United States,* 25 Cl.Ct. 441 (1992).

The CO took no action on these claims, and after 60 days they were deemed denied as provided by 41 U.S.C. § 605. *See Boeing Co. v. United States,* Nos. 92–5129, –5131, slip op. at 5–6, 1993 WL 76280, at *3 (Fed.Cir. 1993). At this point, Boeing attempted to amend its complaint in 91–1077C to include the claims. After denial of its motion to amend, Boeing filed a second complaint based on these claims (92–14C). This court dismissed both actions. *Boeing Co. v. United States,* 26 Cl.Ct. 529 (1992) (dismissing 92–14C); *Boeing Co. v. United States,* 25 Cl.Ct. 441 (1992) (dismissing 91–1077C). The Federal Circuit reversed in an unpublished opinion. *Boeing Co.,* Nos. 92–5129, –5131, slip op. at 6, 1993 WL 76280, at *3. Upon remand, this court consolidated the two actions by allowing the motion to amend and dismissing the complaint in 92–14C as duplicative.

In its current motions defendant contends that the published decision in *Sharman* compels the court to dismiss the TFC and delay claims for lack of jurisdiction due to the absence of a final CO decision. *Sharman* held, much as this court had in the original dismissal, that 28 U.S.C. § 516 (1988), giving exclusive control over litigation to the Justice Department, precluded the CO from dealing with matters that were the subject of litigation. *Sharman Co.,* 2 F.3d at 1571. Because of a lack of authority in the CO, the claims could not be deemed denied. *Id.*

As to the TFC costs claim, defendant also contends that the claim is premature, asserting that this court does not have the power to grant complete relief to plaintiff unless and until the court first sets aside the termination for default. According to defendant, the court may initially only address whether it should convert the termination for default into a termination for convenience. If the court does so, defendant contends that the court cannot grant monetary relief, even if the contractor attempts to submit a claim to the CO in the interim. Rather, the contractor must first await the results of the court proceeding on the default, and, if it is successful, it may then submit a TFC settlement cost proposal to the agency. Only if negotiation on the proposal is unsuccessful and re-

sults in denial of a claim for those costs can a new action on damages be brought to court.

The court is of the view that dismissal of either count would be inconsistent with the terms of the mandate. In addition, Count XVI is not premature. Accordingly, both motions are denied.

### DISCUSSION

■ With respect to the effect of the *Sharman* decision, the court is reluctant to accept the necessity of the dilemma urged on it by the government, and feels compelled to avoid it if possible. The court concludes that the rule of law announced in *Sharman* is compatible with the result on appeal here, if the rule announced in *Sharman* is this: that a CO cannot address a CDA claim when that same CDA claim is in litigation. *See* 2 F.3d at 1571 (the precise legal holding is: "Once a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation."). The factual context of the ruling suggests that the decision is properly limited to a concern for non-interference with claims in a CDA sense. *See Sipco Services & Marine, Inc. v. United States,* 30 Fed.Cl. 478 (1994). The problem on which the court in *Sharman* focused was the identity between the complaint and the CO's decision in terms of the precise quantum of relief sought. Both the CO and the court would have been addressing the question of entitlement to progress payments. *Sharman,* 2 F.3d at 1571. One was a purported government claim for return of progress payments challenged by plaintiff in its complaint. The other was a purported government claim for return of those same monies being considered by the CO. Although both monetary claims were found to be defective, the court was satisfied that they were coextensive.

■ The above-expressed understanding of *Sharman* is compatible with the rule of law announced for this case by the unpublished decision: that contractor claims seeking termination for convenience costs and equitable adjustments are not pending before the court merely because a complaint has previously been filed seeking reversal of a termination for default and demand for return of progress payments, even if the vari-

ous claims and the complaint involve common questions of law and fact. The clear implication of the unpublished order in *Boeing* is that an overlap of legal and factual issues between that which is in court and that which is put in issue by a claim pending before the CO is not enough. The complaint and the matters pending before the CO have to be the same CDA claim. *See* FAR § 33.201. For this reason, the appellate court in this action was apparently not troubled by allegations of the preliminary complaint that went beyond the government claim, and that merely anticipated as-yet-unfiled contractor claims. Read in that fashion, the two decisions are not irreconcilable.

■ Even if the result in *Sharman* could not be squared with the reversal and remand here, however, the court declines to treat *Sharman* as controlling because of the doctrine of the law of the case. Courts have adopted law of the case rules to avoid revisiting issues decided earlier in the same litigation. The doctrine requires a court to adhere to decisions made earlier in the same case.

■ Courts often describe this doctrine as prudential rather than as "a limit to their power." *See, e.g., Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (setting forth this oft-quoted statement). They have recognized three grounds that justify deviation from earlier decisions: new evidence, clear error or manifest injustice, and a change in controlling law. *Kori Corp. v. Wilco Marsh Buggies and Draglines,* 761 F.2d 649, 657 (Fed.Cir.1985).

■ This description of the law of the case doctrine as non-binding is misleading, however, in the instance of a trial court facing issues decided by a higher court earlier in the same litigation. The doctrine has great force in such circumstances, regardless of whether the appellate decision is published. *See* 1B James W. Moore et al., *Moore's Federal Practice,* ¶ 0.404[10] at 11–58 (2d ed. 1988); 18 Charles A. Wright et al., *Federal Practice and Procedure,* § 4478 at 788, 792–93 (1981). These cases fall under the mandate rule, which binds a court to the rulings of a superior court. *See Insurance Group Comm. v. Denver & R. G. W. R.R.,* 329 U.S. 607, 612, 67 S.Ct. 583, 585, 91 L.Ed. 547 (1947).

Doubt exists as to whether the mandate rule allows a trial court to deviate from a higher court's mandate at all. 1B Moore et al., *supra,* ¶ 0.40[10] at II–58 & n. 5 (collecting cases). Wright et al., *supra,* § 4478 at 793. Some cases even suggest that a trial court may not act contrary to an appellate court's mandate even if an intervening Supreme Court decision has contradicted it. *See, e.g., Crane Co. v. American Standard, Inc.,* 603 F.2d 244, 247–48 & n. 8 (2d Cir. 1979) (citing with approval an earlier case in which a district court " 'rightly' " declined to consider an intervening Supreme Court decision's effect on the mandate, instead leaving the matter for the Second Circuit to resolve) (citing *Higgins v. California Prune & Apricot Grower, Inc.,* 3 F.2d 896, 897 (2d Cir. 1924)). Commentators contend that if uncertainty arises as to the soundness of the law of the case established by the higher court, a party should not address its arguments to the trial court; rather, it should address the appellate court by petitioning for rehearing, by moving the appellate court to recall its mandate, or by appealing from the trial court's judgment on remand. 1B Moore et al., *supra,* ¶ 0.40[10] at II–60 to II–61.

■ Although the Federal Circuit has not addressed the specific question raised by defendant's motion to dismiss count XV, it has indicated that the mandate rule strictly limits a trial court's discretion on remand. In an *en banc* decision, *In re Roberts,* 846 F.2d 1360 (Fed.Cir.1988) (en banc), it described the mandate rule as "compulsory:" "Unlike the authority to reconsider its *own* rulings, a district court is without choice in obeying the mandate of the appellate court." *Id.* at 1362–63. The Court of Claims, sitting *en banc,* also described a trial judge's duty to obey an appellate court's mandate in similarly strict terms:

> After an appellate court has decided a case and remanded to a lower court, the latter court "is bound by the decree as the law of the case; and must carry it into execution.... That court cannot vary it, or

examine it for any other purpose than execution; ... or review it, even for apparent error, upon any matter decided on appeal."

*Northern Helex Co. v. United States,* 225 Ct.Cl. 194, 634 F.2d 557, 560 (1980) (*en banc*) (quoting *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895)).

In light of this circuit's strong formulation of the rule, the court concludes that it may not deviate from the Federal Circuit's mandate ordering further proceedings in accord with its finding that this court has jurisdiction.

*Count XVI—The Prematurity Argument*

Boeing contends that the mandate rule applies as well to the TFC claim. The government disagrees, saying that its alternative argument in support of dismissal of Count XVI, prematurity, was not presented to the Federal Circuit and therefore cannot be precluded by the mandate rule. The court disagrees.

■ By directing this court to allow plaintiff to amend the complaint to include challenges to the deemed denials of claims that had been submitted after filing of the initial complaint, the Federal Circuit by necessary implication found that the initial complaint did not present those contractor claims, and that the CO had authority to address them. A further necessary implication of the court's reversal is that a claim for TFC costs need not be delayed pending judicial reversal of a termination for default. If that were not the case, the CO would not have had authority to deal with the claim, and there would have been no deemed denial. The remand would have been pointless. The court stated that:

> [U]nder the government's theory, Boeing could not even submit a claim to the contracting officer seeking conversion of its termination for default to one for the con-

venience of the government until litigation was complete on the default termination claim already before the court.

*Boeing Co.,* Nos. 92–5129, 5131, slip op. at 5, 1993 WL 76280, at *2. Plainly the first part of this sentence can only be referring to a contractor claim for TFC costs. The "default termination claim" referred to in the second part is in fact a contractor challenge to a government claim. The court clearly is distinguishing a certified claim for TFC costs from a challenge seeking only a declaration that the CO wrongly terminated the contract for default. With this language the court voiced its disapproval of any understanding of this court's jurisdiction that would bar a contractor from pursuing a monetary claim unless and until the court has overturned the default termination. Accordingly, the court is directing the consideration of TFC cost claims even before reversal of the default.

■ Even if the mandate rule does not preclude consideration of the substance of defendant's motion to dismiss, the court rejects the merits of defendant's argument with respect to prematurity. For years the government has argued that this court could not hear a claim seeking to overturn a default termination unless it was joined to a claim for money—such as a TFC costs claim. *See, e.g., Overall Roofing & Constr., Inc. v. United States,* 929 F.2d 687 (Fed.Cir.1991) (affirming Claims Court's grant of government's motion to dismiss challenge to default termination because it was not joined to a claim for money); *Berna Gunn–Williams v. United States,* 6 Cl.Ct. 820 (1984) (granting government's motion to dismiss challenge to default termination because it was not joined to a certified TFC costs claim); *Halec Const. Co. v. United States,* 6 Cl Ct. 439 (1984) (same). Deprived of that argument by the Federal Courts Administration Act of 1992,[3] it now takes the position that the court cannot hear a TFC costs claim joined to a claim seeking to overturn a default termination.[4]

---

**3.** Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506, 4519 (codified at 28 U.S.C. 1491).

**4.** Upon converting a default termination into a termination for convenience, this court's practice has been to resolve the claim for TFC costs (or to

allow the parties to stipulate to them). *See, e.g., Sterling Millwrights, Inc. v. United States,* 26 Cl. Ct. 49, 112–13 (1992); *Cervetto Bldg. Maintenance Co. v. United States,* 2 Cl.Ct. 299, 304 (1983). *See also Lisbon Contractors v. U.S.,* 828 F.2d 759 (Fed.Cir.1987).

Plaintiff's characterization of the government's argument as "fickle" is apt.

■■■ Under the CDA, this court has jurisdiction over claims that have been presented to, and denied by, a CO. 41 U.S.C. § 609 (1988). To constitute a "claim" for money under the applicable regulations, the contractor's submission to the CO must meet certain requirements, which the Federal Circuit has summarized as: "(1) the demand or assertion must be in writing, (2) the money must be sought as a matter of right, and (3) the writing must set forth a sum certain." *Essex Electro Eng'rs, Inc. v. United States,* 960 F.2d 1576, 1580 (Fed.Cir.1992); *see* 48 C.F.R. § 33.201 (1993). Boeing's claim unquestionably meets these requirements. It presented to the CO a written claim, which asserted that under the default clause plaintiff had a right to a sum of $644,354,109.00 in TFC costs because the government's default termination was wrongful.

■■ The FAR also limits claims to matters that are in dispute at the time that the contractor submits the claim to the CO. *Santa Fe Engineers, Inc. v. Garrett,* 991 F.2d 1579, 1582–83 (Fed.Cir.1993); *Dawco Construction Inc. v. United States,* 930 F.2d 872, 878 (Fed.Cir.1991). The government asserts that no dispute over TFC costs existed before Boeing submitted its TFC claim to the CO, because Boeing had not first submitted, and the parties had not reached an impasse on, a settlement proposal on those costs. This assertion fails to recognize that the existence of a default termination fundamentally conflicts with a contractor's claim that it is entitled to TFC costs. Plainly the parties are in dispute at that point. A settlement proposal presumes both parties accept the fact of a termination for convenience.

■■ Defendant points out that the court must view these CDA requirements in the broader context of the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988), which requires claims before this court to be for money asserted to be presently due and owing. *See United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23

L.Ed.2d 52 (1969). Defendant contends that the government has no current monetary obligation to a contractor that it has wrongfully default terminated while that contractor is still "subject to the default termination." Under defendant's theory, if it default terminates a contractor, the contractor is in default, in both fact and law, unless and until a court adjudicates otherwise. According to defendant, a contractor has no right to submit a TFC costs claim until a court declares that the government terminated it for convenience.

Defendant's argument relies upon its interpretation of the language of the default clause, which states:

If, after termination, it is determined that the Contractor was not in default, or that the default was excusable, the rights and obligations of the parties shall be the same as if the termination had been issued for the convenience of the Government.

48 C.F.R. § 52.249–8(g) (1993). Defendant contends that this language mandates that the court only may grant relief prospectively from its conversion of the default termination into a termination for convenience. Only after that conversion may the contractor submit a TFC settlement proposal, and, if a dispute over the proposal arises, submit a claim and start the running of interest.

■■ Assuming for purposes of this motion that plaintiff's version of events is correct, the court concludes that it has jurisdiction over plaintiff's TFC costs claim. If the government wrongfully terminated the contract for default as plaintiff alleges, then the court must view events as if a TFC "had been issued." Accordingly, the events that followed the termination take on the following character: Plaintiff was entitled to pursue TFC costs. Its entitlement to these costs was, however, in dispute because the government had denied liability for them through its issuance of a default termination. Thus, plaintiff's TFC claim was properly before the CO, it was deemed denied after 60 days, and it is now properly before this court.[5]

---

5. The court need not decide whether a separate right to claim TFC costs also arises upon a declaration by this court or by a CO that a default

termination was wrongful. Plaintiff concedes, however, that the rule of law that it advocates here leaves open that question. *Compare D.*

The misdirection of defendant's argument is more clearly seen when the present suit is compared to a traditional breach of contract/damages claim. By analogy, defendant would be contending that the plaintiff first must have the defendant declared in breach. Then it could bring a separate action for damages. As the Court of Claims pointed out in *Nolan Bros., Inc. v. United States,* 186 Ct.Cl. 602, 608–610, 405 F.2d 1250 (1969), the TFC costs remedy is a substitute for the damages component of a breach of contract action. Thus, plaintiff may plead that damages are presently due and owing.

Defendant finds further support for its position in the ASBCA's practice of bifurcating the entitlement and quantum portions of attempts to overturn default terminations. This practice does not stem from a requirement in the default clause. Rather, it reflects a practice based on prudential concerns. Congress intended for the boards "to provide a swift, inexpensive method of resolving contract disputes." S.Rep. No. 1118, 95th Cong., 2d Sess., reprinted in 1978 U.S.C.C.A.N. 5235, 5246. In keeping with that desire, the ASBCA follows a prudential policy of dismissing as premature TFC claims joined to challenges to TFDs. *See Dewey Elect. Corp. v. United States,* 803 F.2d 650, 655 (Fed.Cir.1986); *see, e.g., Aerosonic Corp.,* ASBCA No. 42696, 91–3 BCA ¶ 24,214, 1991 WL 150158 (1991); *Seminole Refining Corp.,* ASBCA Nos. 35088, 35930, 88–3 BCA ¶ 20,882, 1988 WL 63475 (1988). This practice does not preclude submitting TFC claims to the CO. Rather, it delays the appeal of CO decisions on TFC claims until after the conversion decision is made. *See Aerosonic Corp.,* 91–3 BCA ¶ 24,214 at 121,-118 (stating that plaintiff could submit TFC claim to CO "at any time after a default termination to start interest running" in the event that the default is converted). In any event, that practice is not universal among the boards. *See, e.g., Delfour, Inc.,* VABCA Nos. 3803 et al., 1993 WL 401941, 1993

VABCA LEXIS 29 (Oct. 6, 1993) (rejecting the same prematurity argument made here and allowing plaintiff to litigate its challenge to the default termination and claim for TFC costs at the same time).

Defendant also urges that its proposed bifurcated procedure is the most efficient and practical way of addressing litigation over default terminations. For many years before this motion, however, the government has argued that disposing of both claims in one action was not only required, but more efficient. Indeed, at the hearings that led to the Courts Administration Act of 1992, the Department of Justice voiced opposition to granting this court declaratory judgment power in default termination cases. Deputy Assistant Attorney General Stuart E. Schiffer expressed "concerns that allowing piecemeal attacks on the day-to-day administration of procurement law could wreak havoc with the Government procurement process." [6] Now, the government contends that piecemeal attacks are the most efficient way of litigating challenges to default terminations.

In the past, both Congress and the Federal Circuit also have expressed a preference that this court address all claims in a single action. Congress has stated that the more efficient practice is for this court "to grant all necessary relief *in one action,*" H.R.Rep. No. 1023, 92d. Cong., 2d Sess. 3 (1972), and noted that: "It is the opinion of this committee that the aim of modern practice [is] to avoid repetitive lawsuits and to make it possible to dispose of all the claims and to adjudicate all of the rights of the parties in a single proceeding," *id.* at 4. The Federal Circuit as well has said that "[i]n light of the greater formality of the Claims Court ... the more efficient approach is to appeal all issues together." *Overall Roofing,* 929 F.2d at 690.

■ Although plaintiffs no longer must bring their money claims at the same time as their challenges to default terminations,

---

*Moody & Co. v. United States,* 5 Cl.Ct. 70 (1984) with *Z.A.N. Co. v. United States,* 6 Cl.Ct. 298 (1984).

**6.** *Court of Federal Claims Technical and Procedural Improvements Act: Hearing on S. 2521 Be-*

*fore the Subcommittee on Courts and Administrative Practice of the Comm. on the Judiciary,* 102d. Cong., 2d Sess. 18–19 (1992) (statement of Dep. Ass't Att'y Gen. Stuart E. Schiffer).

nothing in the legislative history of the Federal Courts Administration Act of 1992 indicates that Congress intended to require bifurcation of the claims or now believes that such a practice would be more efficient. When Senator Heflin introduced the legislation, he said that its provisions were "aimed at improving the Federal claims litigation process ... and assisting the court in providing better and more efficient service to its litigants." 138 Cong.Rec. S17798–99 (daily ed. Oct. 8, 1992). Congress plainly intended the recent amendments as an expansion of this court's jurisdiction. Defendant's motion incorrectly advances a theory that would use the same legislation to narrow it.

### CONCLUSION

The decision reversing the earlier dismissal directs the court to entertain the counts that defendant seeks to dismiss in its pending motions. The decision in *Sharman* is not inconsistent with that result. If it were, however, the law of this case dictates denial of the motion as to both counts. The court rejects as well defendant's alternative argument as to the prematurity of Count XVI. The motions to dismiss are therefor denied.

### ORDER

May 13, 1994

Defendant has moved for reconsideration of the court's opinion of April 25, 1994 denying the motion to dismiss count XV. The arguments raised were considered by the court before denying the motion to dismiss. The only novel aspect of the motion is the request that the court base its decision solely on the law of the case doctrine. Because the motion to dismiss was on jurisdictional grounds, however, the court felt compelled to deal directly with the motion on its merits as well. Moreover, faced with two binding, allegedly inconsistent decisions, a trial court must make a reasonable effort to avoid an interpretation that assumes inconsistent results emanating from the same adjudicative body. Accordingly, the motion for reconsideration is denied.

United States Court of Federal Claims.